## BAUMLER v. FORD MOTOR CO.
### Civ. A. No. 3025.

United States District Court
D. Minnesota, Fourth Division.

Dec. 3, 1949.

Pierce Butler, III, and Doherty, Rumble, Butler & Mitchell, of St. Paul, Minn. (Robert G. Harris, of Dearborn, Mich., of counsel), appeared in behalf of defendant in support of the motion.

Benjamin Segal, of Minneapolis, Minn., appeared in behalf of plaintiff in opposition thereto.

NORDBYE, Chief Judge.

This is an action for alleged patent infringement. Defendant moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Plaintiff has brought this action for an alleged infringement by defendant upon plaintiff's patent of an "Oil Retainer for Steering Gears". Plaintiff seeks an injunction to prevent future violations and an accounting of profits which defendant allegedly enjoyed from alleged past infringements. The patent in question was applied for by plaintiff on October 19, 1931. It was issued to him on October 4, 1932. He first charged this defendant with infringement in 1933. He "left it just drop" in 1934. This suit was commenced in May, 1949.

Defendant now moves for a summary judgment in its favor upon the ground that plaintiff's patent "was in wide-spread public use and sale in the United States by the patentee himself for more than two years before he filed his application for patent in the United States Patent Office * * *."

Defendant relies upon the plaintiff's deposition for factual support and upon 35 U.S.C.A. §§ 31, 32, and 69, before the amendment of 1939 which substituted one year for two years, together with the cases interpreting them, for the applicable legal principles.

Section 31 of 35 U.S.C.A., R.S. § 4886, provides: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement thereof, * * * not in public use or on sale in this country for more than two years prior to his application, * * * may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

Section 32 of 35 U.S.C.A., R.S. § 4887, provides: "But no patent shall be granted on an application for patent for an invention or discovery or a design which had been patented or described in a printed publication in this or any foreign country more than two years before the date of the actual filing of the application in this country, or which had been in public use or on sale in this country for more than two years prior to such filing."

Section 69 of 35 U.S.C.A., R.S. § 4920, provides:

"In any action for infringement the defendant may plead the general issue, and, having given notice in writing to the plaintiff * * * thirty days before, may prove on trial any one or more of the following special matters: * * *

"Fourth. That it had been in public use or on sale in this country for more than two years before his application for a patent, or had been abandoned to the public."

Thus, if, as defendant claims, plaintiff sold his patent to the public for public use for more than two years prior to the date he applied for a patent—October 19, 1931—plaintiff does not possess a valid patent, and defendant's motion must be granted. Electric Storage Battery Co. v. Shimadzu, 1938, 307 U.S. 5, 59 S.Ct. 675, 83 L.Ed. 1071, and cases cited therein. Plaintiff does not seriously dispute this. But plaintiff contends that the oil retainer in question was in the experimental stage until he applied for a patent in 1931, and that he did not install the retainer for public use until 1931. If plaintiff's contention be sound, then the prohibitions enunciated by the statutes are inapplicable. Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000; Electric Storage Battery Co. v. Shimadzu, supra, 307 U.S. at page 20, 59 S.Ct. at page 683; Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141.

A reading of plaintiff's deposition, which was taken by defendant, leaves no doubt that plaintiff sold the oil retainer in question to persons patronizing his garage in 1928 and installed retainers in Model A Ford cars during that year. The deposition shows that in 1928 plaintiff was a skilled auto mechanic who specialized in Ford car repairing. He operated his own garage. The Model A Ford of that year developed an oil leakage from the steering gear housing after a certain amount of use, and the retainer which plaintiff incorporated in his patent occurred to plaintiff as a remedy for the trouble. The idea came to plaintiff in 1928. And he began installing them at that time for $1.75 in the Model A Fords which came to him for repair of that trouble. After a short time he also began to sell them to Ford dealers. The following excerpts from the deposition are particularly pertinent. (The number preceding the dash refers to the page of the deposition; the number following refers to the line of the page).

28—7. "Q. When did you get the idea of the seal? A. 1928.

"Q. You must have had that before you applied for the patent? A. '28 they started leaking grease in there and I started on that.

"Q. Did you build one of them at that time? A. Yes.

"Q. Did you install any of them at that time? A. Yes.

"Q. Did you put them in cars? A. Yes.

"Q. That you repaired in your shop? A. Yes.

"Q. Approximately how many of them did you install; have you any idea? A. Oh, at that time in '28 I only made a few of them. None of them knew what I was doing to stop the grease. I made these and put them in there. Then in '29 the steering gear was changed; it was different inside. They improved on that; * * *."

37—6. "Q. You recall quite clearly that you installed some of those as early as '28? A. Yes, '28.

"Q. And the ones you installed are substantially as shown in your patent? A. Yes.

"Q. They had a flange? A. They had a flange."

46—7. "Q. What, generally did you charge for this sort of a job or repair, you recall? A. You mean labor and all?

"Q. Yes. A. $1.75.

"Q. That include both the seal and labor? A. Seal and labor.

"Q. You don't have any idea how many of those you used? A. Oh, I don't know. Quite a few thousand of them. I wouldn't be able to say how many of these. Quite a few.

"Q. Was it in the neighborhood—A. Every job that leaked in the later years, that went in them. When I was in the service station greasing cars I had the fullest opportunity to catch every Ford coming in.

"Q. I am talking about this early construction which you said you had in '28. Was that in the neighborhood of ten or a hundred—something like that? A. I know it was several hundred of them anyways. I know that for sure. I can't say exactly."

49—13. "Q. But you did, as early as 1928, put them in Ford cars, charging about $1.75? A. $1.75."

From these quotations, the only possible conclusion is that plaintiff sold his oil retainer to the public in 1928 and did not apply for a patent on it until 1931. In plaintiff's affidavit on this motion, he cites pages 66 and 65 of the deposition, "particularly lines 15 through 22 on page 65", as showing that the 1928 models to which he referred in the above quotations "in all probability" were repaired in 1931, not 1928. But those lines on page 65 refer to the source of the patent drawing about which plaintiff there was being questioned. It had nothing to do with any explanation as to when he started to install his oil retainer. In fact, as defendant points out, if the deposition is followed through to the end of the reference to the drawing involved in the questions on page 65, it concludes, at page 66, "Q. So that the drawing that finally appears in the patent is a fair indication of the flanged type of seal that you were installing in 1929, along with the soldered type—1929 and '28, is that correct? A. Yes." Plaintiff obviously sold the retainer in 1928, and no genuine fact issue upon that point exists, so far as the record now before the Court indicates.

Plaintiff's claim that his oil retainer was experimental in 1928 is based primarily upon conclusions in his affidavit. The amplification which his deposition gives to his statements in his affidavit leaves no doubt that actually plaintiff did not experiment from 1928 to 1931 within the meaning of the patent law understanding of those terms. The reason he did not apply for his patent before 1931 was due to his unfortunate financial situation, not because of any "perfecting" which still remained to be done upon his retainer.

That plaintiff did more than experiment within the meaning of patent requirements appears from various parts of the deposition. During 1928 and 1929, he put the retainers in every Model A Ford which required repair and whose owner permitted it. He charged a fee for that work, and he did not install the retainer merely to determine its practicability. He installed it for a profit as a part of his regular garage work. He paid no attention to what happened to the retainers after he installed them in the cars. That is, he kept no record to determine what performance was rendered by his retainers. He did not bother even to keep a record of the cars in which he installed them. He made absolutely no restriction of any kind upon

the use of his retainer, in so far as this record shows. Such acts are inconsistent with experimentation, within the meaning of the patent law. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141; Egbert v. Lippman, 104 U. S. 333, 26 L.Ed. 755; Smith & Davis Mfg. Co. v. Mellon, 8 Cir., 58 F. 705; Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000. Moreover, the original retainers were essentially like those covered by the patent. There was no change. Although the original retainers may have been made of different material and were a different degree of finished product than the retainers which were installed at the time the patent was sought, that material and degree of finished workmanship do not concern the substance of the invention. The deposition shows that the original retainers worked well and therefore that the tubing which plaintiff purchased in quantity for the first time in 1931 was not essential to the invention which plaintiff had been selling to anyone who desired the article for more than two years prior to October 19, 1931. The claim that the article was in the experimental stage until 1931 is not supported and raises no genuine issue of fact upon this record. In fact, the deposition clearly discloses that the oil retainers, which he began to install in cars in 1928 and which totaled some several hundred during that year, according to his testimony, were the identical articles and were marketed by installation in cars in substantially the same way as in the years which followed. The sales, therefore, in 1928 were, as the court observed in Allinson Mfg. Co. v. Ideal Filter Co., 8 Cir., 21 F.2d 22, 27, "the intended use and only use to which and for which it was later manufactured and sold."

Plaintiff urges that he should have his day in court and that his claim should not be disposed of by way of a summary judgment. Plaintiff has had his day in court. His testimony as incorporated in the deposition is before the Court in the same manner as if the evidence had been taken at the trial. It is not contended on this motion that the testimony given by him in the deposition as to prior use and sale is in error or that he made any mistake in giving his answers. The verity of the deposition is not challenged. He was represented by counsel at all times. In meeting this motion, plaintiff merely assumes to attempt to explain some of his testimony and states that defendant has misconstrued his answers. And he attempts in his affidavit to ascribe to his testimony conclusions which the text of the deposition will not sustain. He refers to "make-shift" repairs and "make-shift" tubes as being the type of prior use and sale before 1931. But such assertions are without any persuasive force in view of the testimony in his deposition, which in great detail discloses that the prior use and sale consisted of finished material and finished repairs, although the quality of the material and the quality of the workmanship may have improved in later years. It is significant that on this motion it is not contended that a trial on the merits will disclose anything in addition to plaintiff's own testimony on this issue. Manifestly, therefore, it would be idle to expend time, effort and expense in the trial of what may prove to be a long and involved patent suit, when it appears that the plaintiff apparently has slept on his rights for some fifteen years, and it now conclusively appears that his patent is invalid.

Upon these premises, the two-year statutory period of limitation, during which application must be made for a patent, expired before plaintiff applied for his patent. Plaintiff's patent is invalid. Defendant's motion for summary judgment must be granted upon the ground " * * * the pleadings, depositions and admissions on file * * * show that * * * there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law."

Let judgment be entered accordingly for defendant. It is so ordered. An exception is allowed.