**L'AIGLON APPAREL, Inc.**
v.
**LANA LOBELL, Inc.**
No. 11241.

United States Court of Appeals
Third Circuit.

Argued April 8, 1954.
Decided July 2, 1954.

Earl G. Harrison (Robert J. Callaghan, Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellant.

Arthur Markowitz, York, Pa. (Richard V. Zug, Edmonds, Obermayer & Rebmann, Philadelphia, Pa., Markowitz, Livgrant & Boyle, York, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Plaintiff, a manufacturer, and defendant, a retailer, are both members of the dress industry, selling dresses in commerce. Each is incorporated in Pennsylvania. Alleging a fraudulent and injurious use of a picture of plaintiff's dress in defendant's advertising, the plaintiff brought this action under the Lanham Trade-Mark Act of 1946 [1] for damages and injunctive relief. Defendant moved to dismiss the complaint on the ground that it failed to state a cause of action. The court granted defendant's motion on that ground and also because, in the absence of diversity of citizen-

---

**1.** 60 Stat. 427, 15 U.S.C.A. §§ 1051–1127.

ship, the court believed there was no federal jurisdiction. D.C., 118 F.Supp. 251. Plaintiff appealed.

The complaint explicitly undertakes to state a cause of action "under §§ 39, 43 (a) and 44(b), (h) and (i) of the Lanham Act * * *." The district court concluded that Section 44 was inapplicable but did not comment on Section 43(a) as implemented by Section 39. We think Section 43(a) is applicable.

On its face Section 43(a) seems rather clearly to cover the present claim. It provides in relevant part that "Any person who shall * * * use in connection with any goods * * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods * * * to enter into commerce, * * * shall be liable to a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation." Section 39 gives federal district courts jurisdiction of causes arising under this statute regardless of the amount in controversy or the citizenship of the litigants.

The present complaint alleges that plaintiff created and alone, sold to the retail trade throughout the country a certain distinctively styled dress. To advertise this dress plaintiff published pictures of it, together with its price, $17.95, in advertisements in leading newspapers and in some two million individual mailing pieces distributed through retailers. In this way the picture and price of this dress became associated in the minds of many readers and identified as plaintiff's $17.95 dress.

It is further alleged that, at about the same time, defendant was offering for sale through mail order and otherwise in interstate commerce a dress which in fact was much inferior to plaintiff's in quality and notably different in appearance. In this connection defendant published under its name in a magazine of national circulation a display advertisement worded and designed to promote the mail order sale of its dress at a stated price of $6.95, but showing as the most prominent feature of the advertisement an actual photographic reproduction of plaintiff's dress, thus fraudulently represented as the article defendant was selling for $6.95. Plaintiff alleges that this misrepresentation caused some trade to be diverted from plaintiff to defendant and caused other trade to be lost by plaintiff as a result of the mistaken impression conveyed to those familiar with the advertising of both parties that plaintiff was offering for $17.95 a dress worth only $6.95.

In relation to the language of Section 43(a) this complaint states about as plain a use of a false representation in the description of goods sold in commerce as could be imagined. And plaintiff's alleged damage as a result of defendant's misrepresentation may well be demonstrable within the normal requirements of legal proof and in such way as to entitle plaintiff to relief authorized by the statute. Thus, Section 43(a) seems to cover this case clearly and without ambiguity.

What then is the difficulty? It is, if we rightly understand defendant's position, that before the 1946 enactment of this statute, federal courts had imposed such restrictions on liability for unfair competition that one in plaintiff's position could not recover for the kind of conduct here charged. Therefore, it is argued, federal courts should so construe the statute as to preserve these judgmade limitations on liability.

We quickly dispose of a claim that relevant limitations on liability are to be derived from Mosler Safe Co. v. Ely-Norris Safe Co., 1927, 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578. For that case expresses no more than the Court's judgment as to the inadequacy at common law of a particular pleading of injury as the result of a defendant's misrepresentation that his product contained an important feature of another's product. Here we see no inadequacy in the present plaintiff's statement of such an injury as Section 43(a) explicitly makes the proper subject of redress.

It is also urged that before 1946 a line of cases beginning with American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 1900, 103 F. 281, established the doctrine that in the area of present concern misrepresentations about goods were actionable only if they had led or were likely to lead customers, through confusion of defendant's and plaintiff's goods, to buy the former under the misapprehension that they were the latter. "Palming off", narrowly conceived, was said to be essential to any recovery. And the view has been expressed judicially that some such limitation is to be read into Section 43(a) of the Lanham Act. Chamberlain v. Columbia Pictures Corp., 9 Cir., 1951, 186 F.2d 923; Samson Crane Co. v. Union National Sales, Inc., D.C.Mass.1949, 89 F.Supp. 218, 222. But we think it could as plausibly be argued that Section 43(a) reflects the more modern viewpoint [2] of Section 761 of the Restatement of Torts, which provides:

"One who diverts trade from a competitor by fraudulently representing that the goods which he markets have ingredients or qualities which in fact they do not have but which the goods of the competitor do have, is liable to the competitor for the harm so caused, if,

"'(a) when making the representation he intends that it should, or knows or should know that it is likely to, divert trade from the competitor, * * *.'"

However, we reject this entire approach to the statute. We find nothing in the legislative history of the Lanham Act to justify the view that this section is merely declarative of existing law. Indeed, because we find no ambiguity in the relevant language in the statute we would doubt the propriety of resort to legislative history even if that history suggested that Congress intended less than it said. It seems to us that Congress has defined a statutory civil wrong of false representation of goods in commerce and has given a broad class of suitors injured or likely to be injured by such wrong the right to relief in the federal courts. This statutory tort is defined in language which differentiates it in some particulars from similar wrongs which have developed and have become defined in the judge made law of unfair competition. Perhaps this statutory tort bears closest resemblance to the already noted tort of false advertising to the detriment of a competitor, as formulated by the American Law Institute out of materials of the evolving common law of unfair competition. See Torts Restatement, Section 761, supra. But however similar to or different from pre-existing law, here is a provision of a federal statute which, with clarity and precision adequate for judicial administration, creates and defines rights and duties and provides for their vindication in the federal courts. For illuminating discussions of Section 43(a) and its relation to precedent law, see Callman, False Advertising as a Competitive Tort, 1948, 48 Col. L.Rev. 876, 877–886; Bunn, The National Law of Unfair Competition, 1949, 62 Harv.L.Rev. 987, 998–1000.

■ We are satisfied that no limitation appears on the face of Section 43(a) and none can properly be imposed which would make the present complaint an insufficient statement of a cause of action under that section. Of course, Section 39 makes it unnecessary to show diversity of citizenship or any jurisdictional amount. It follows that the dismissal of the complaint was error.

While we reverse the judgment of the district court on the ground that a cause of action has been stated under Section 43(a) of the Lanham Act, the complaint also predicated jurisdiction on Section 44(b), (h), and (i). The district court ruled that this section was not applicable to this type of case. The matter is important and it is clearly in issue. Therefore, although we could dispose of the

---

**2.** Apparently an outgrowth of the limited relaxation of the strictures of the American Washboard case sanctioned by the Circuit Court of Appeals in Ely-Norris Safe Co. v. Mosler Safe Co., 2 Cir.1925, 7 F.2d 603.

present appeal without passing on this issue, thus leaving the district courts which look to us for guidance to speculate on the significance of our silence, we think it better to say now that we agree with the district court in its construction of Section 44.

Prior to the passage of the Lanham Act, federal courts had authority to decide claims of unfair competition only if federal jurisdiction was supplied by diversity of citizenship, or if the unfair competition claim was pendent to a substantial and related federal claim. Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. Since the passage of the Lanham Act, two lines of authority have developed regarding federal jurisdiction over ordinary claims of unfair competition, apart from the wrongs specified in Section 43(a). The Court of Appeals for the Second Circuit has held diversity and pendent jurisdiction still to be the only bases of federal cognizance of such claims. But in the Ninth Circuit it has been held that the statute gives federal courts jurisdiction to hear all unfair competition claims regardless of diversity or pendent jurisdiction, so long as the unfair competition affects commerce.

The Second Circuit view is that Section 44,[3] which together with Section 39 contains the provisions of the Lanham Act relied on here as the basis of jurisdiction, reveals merely a design to give United States citizens reciprocal rights against foreign nationals where foreign nationals compete unfairly with them. It does not aim to create a federal law of unfair competition available to United States citizens one against the other nor does it grant the federal courts any new authority to hear such controversies between citizens. American Automobile Association v. Spiegel, 2 Cir., 1953, 205 F.2d 771. Accord: Old Reading Brewery, Inc. v. Lebanon Valley Brewing Co., M.D.Pa.1952, 102 F.Supp. 434.

In somewhat greater detail, it is reasoned that Section 44(b) grants to certain foreign nationals and others domiciled or doing business in a foreign country "the benefits * * * of this chapter to the extent and under the conditions essential to give effect to" certain enumerated conventions and treaties. Subsection (i) gives United States citizens the same benefits as are "granted * * * to persons described in subsection (b)." Subsection (h) gives any person designated in subsection (b) as entitled to the benefits and subject to the provisions of the chapter "effective protection against unfair competition". Thus, under subsection (i) the citizen gets only that protection which certain aliens get under subsection (h), which in turn refers back to subsection (b) for a statement of its coverage. This last reference is reasonably construed as comprehending not merely the na-

3. The three subsections of Section 44 relied on are (b), (h), and (i) which read as follows:

"(b) Persons who are nationals of, domiciled in, or have a bona fide and effective business or commercial establishment in any foreign country, which is a party to (1) the International Convention for the Protection of Industrial Property, signed at Paris on March 20, 1883; or (2) the General Inter-American Convention for Trade Mark and Commercial Protection signed at Washington on February 20, 1929; or (3) any other convention or treaty relating to trade-marks, trade or commercial names, or the repression of unfair competition to which the United States is a party, shall be entitled to the benefits and subject to the provisions of this Act to the extent and under the conditions essential to give effect to any such conventions and treaties so long as the United States shall continue to be a party thereto, except as provided in the following paragraphs of this section.

    *     *     *     *     *

"(h) Any person designated in paragraph (b) of this section as entitled to the benefits and subject to the provisions of this Act shall be entitled to effective protection against unfair competition, and the remedies provided herein for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

"(i) Citizens or residents of the United States shall have the same benefits as are granted by this section to persons described in paragraph (b) hereof."

tional identification of beneficiaries of the legislation but also the limiting context in which rights are conferred upon them. That context is stated explicitly in the words, "to the extent and under the conditions essential to give effect to any such conventions and treaties", as they appear near the end of subsection (b). If the foregoing analysis is correct, the words last quoted limit the federal rights conferred in subsection (i) in a way which obviously excludes the ordinary domestic controversy such as we have here.

The Ninth Circuit view as expressed in Stauffer v. Exley, 1950, 184 F.2d 962, and reaffirmed in Pagliero v. Wallace China Co., 1952, 198 F.2d 339, is that Section 44 of the Lanham Act creates a substantive federal law of unfair competition with remedies available between United States citizens wherever there is present the requisite involvement of interstate commerce. Under this view subsection (h) refers to subsection (b) only to identify the aliens who are entitled to the benefits of subsection (h), without connoting any limitation on the scope of protection. It is concluded that the identified aliens would be entitled to unqualified "protection against unfair competition," and, by virtue of subsection (i) citizens would also be so entitled.

In choosing between these constructions we are impressed that Section 44 with its various subsections, different from Section 43, is found under Title IX of the Act which is entitled "International Conventions." Was it the intent of Congress, when it used the foregoing language in a title implementing international conventions, to establish a federal law of unfair competition in commerce unrelated to any matter arising out of some international convention or treaty? The legislative history of the Act suggests a negative answer.

H.R. 4744, introduced in the 76th Congress on March 3, 1939, was the first of a series of trade-mark bills to include a title on international conventions. That original title differed in two material particulars from its counterparts in the trade-mark bills subsequently introduced, introduced, including the one which became the Lanham Act. First, H.R. 4744 included a section which stated that "All acts of unfair competition in commerce are declared to be unlawful * * *." Second, H.R. 4744 did not include any language similar to subsection (h) of Section 44 of the present Lanham Act.

As to the first difference, objection was made at the hearings that the section declaring all acts of unfair competition in commerce to be unlawful was dangerously broad; that it gave jurisdiction to the federal courts in any case involving unfair competition regardless of diversity of citizenship, and that it was not sufficiently tied up with the heading "Conventions" to indicate its purpose was simply to implement those international agreements. It was suggested that this broad section be omitted and that instead Section 32, which dealt with remedies, include language covering unfair competition.[4] This, it was said, would tie the remedy "to a registration granted under this act, so that there is some basis for the Federal jurisdiction."[5] It was suggested that if this were done there would be "something which we could very plausibly tell our foreign friends that 'This is what we consider unfair competition and if you will register your trade-mark here, you will get this protection.' At the same time it fits right in with the purpose of the whole act allowing any distinctive mark to be registered and would make a consistent law without a somewhat dangerous, broad, extraneous passage * * * [declaring all acts of unfair competition unlawful]."[6] Later in the discussion, however, it was pointed out

4. Hearings before the Committee on Patents, Sub-Committee on Trade-Marks, House of Representatives, 76th Congress, 1st Session, on H.R. 4744, pp. 163–168.

5. Remedy under Section 32 was available only to a trade-mark registrant.

6. Hearings, supra, p. 167.

that while one international convention prohibited unfair competition with respect to the marking of goods, another went much further and prohibited "commercial bribery among other things." [7] It was suggested, therefore, that a separate section to implement the various conventions might be drafted.

On June 1, 1939, two months after the close of hearings on H.R. 4744, Mr. Lanham reintroduced trade-mark legislation, this time as H.R. 6618. This bill omitted the broad provision declaring all acts of unfair competition to be unlawful but included a separate section which read:

> "Any person designated in paragraph (a) [sic, (b) ?] of this section as entitled to the benefits and subject to the provisions of this Act, shall be entitled to effective protection against unfair business competition, and the remedies provided herein against infringement of trade-marks shall be available so far as they may be appropriate."

It was substantially in this form that trade-mark legislation was subsequently introduced in the 77th and 78th Congress, H.R. 82 of the latter Congress becoming the Lanham Act.

This legislative history lends support to the following inferences and interpretations limiting Section 44:

1. Congress, by its discussion and rejection of the broad provision of H.R. 4744 of the 76th Congress declaring all acts of unfair competition to be unlawful, revealed an unwillingness to give federal courts jurisdiction of unfair competition claims to the full extent of its power to regulate commerce.

2. The intent of Congress was to implement international agreements which were not self-executing and which varied in their coverage of practices in the field of unfair competition.

3. By rejecting the suggestion that the unfair competition provision be placed in the section providing remedy to registrants alone and by placing it in a separate section in accordance with the suggestion that some conventions prohibit unfair competition in respects other than the marking of goods, Congress manifested an intent to fashion a remedy to coincide with rights growing from the respective international agreements.

4. The "effective protection against unfair competition" granted in subsection (h) is coextensive with the varying substantive provisions of the international agreements, and

5. the same limitation applies to the benefits granted to citizens in subsection (i).

In addition, we think it is proper in construing the Lanham Act to give weight, as the court below did, to the fact that Section 1338(b) of Title 28 of the United States Code as adopted some two years after the Lanham Act gives the district courts jurisdiction of "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws." This seems to be a legislative codification of the rule of Hurn v. Oursler, supra. But there was no need for such a limited declaration of jurisdiction over unfair competition if the Lanham Act had covered this situation with countless others in a much broader grant of jurisdiction over all unfair competition in commerce. Thus Section 1338(b) strengthens the inference that the Lanham Act was not intended to bring all unfair competition in commerce within federal jurisdiction.

■ For these reasons we adopt the conclusion of the Court of Appeals of the Second Circuit that Section 44 does not cover such cases as the present one.

The judgment will be reversed and the cause remanded for further proceedings in conformity with this opinion.

---

7. Compare The Inter-American Convention for Trade Mark and Commercial Protection, Article 21, Treaties, Conventions, International Acts, Protocols and Agreements between the United States and other Powers, vol. 4, p. 4768 at p. 4774 with the International Convention for the Protection of Industrial Property, Article 10 Bis, ibid. p. 5516 at p. 5527.