**SKIL CORPORATION,**
Plaintiff,

v.

**ROCKWELL INTERNATIONAL CORPORATION, a corporation,**
Defendant.

**No. 74 C 22.**

United States District Court,
N. D. Illinois, E. D.
May 6, 1974.

Thomas A. Reynolds, Jr. and Winston & Strawn, Stanley A. Walton, III, Chicago, Ill., for plaintiff.

Caryl P. Bonotto and Kirkland & Ellis, Steven P. Handler, Chicago, Ill., for defendant.

## OPINION

AUSTIN, District Judge.

This is an action to enjoin alleged violation of Section 43(a) of the Lanham Act (15 U.S.C.A. § 1125(a)),[1] to enjoin various forms of unfair competition, and to obtain an accounting of gains and

profits derived from defendant's illegal activities, as well as judgment for compensatory damages. Original federal jurisdiction of the Lanham Act claim is predicated upon 15 U.S.C.A. § 1121,[2] and 28 U.S.C.A. § 1338(a).[3] Pendent federal jurisdiction is alleged with respect to the unfair competition claims under Illinois law, relying upon 28 U.S.C.A. § 1338(b).[4]

The gist of the action is that the business of the plaintiff ("Skil") was and is presently being injured by advertisements of the defendant ("Rockwell"), in that such advertisements make false and misleading factual statements and comparisons of the companies' respective products which compete with each other in interstate commerce. The case is presently before the Court to resolve those questions raised by defendant's motion to dismiss the action partly for failure of the Complaint to state a claim upon which relief may be granted and partly for lack of subject-matter jurisdiction.

### I.

The alleged facts, which must be taken as true in deciding the pending motion, are as follows:

Skil and Rockwell are Delaware corporations which manufacture, advertise

---

1. 15 U.S.C. § 1125(a) reads as follows:

"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

2. 15 U.S.C. § 1121 reads as follows:

"The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

3. 28 U.S.C. § 1338(a) reads as follows:

"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

4. 28 U.S.C. § 1338(b) reads as follows:

"(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

and sell various portable electric tools, including drills and jigsaws, for the home consumer market in direct competition with each other in Illinois and in interstate commerce under their respective trademarks and tradenames. Plaintiff has invested large sums of money on research, development, inventions, patents and trademarks for its products and also in the development of public acceptance and goodwill associated with those products.

Since September 1, 1973, Rockwell has been conducting a national and local advertising and promotional campaign in such media as television commercials, trade journals, popular consumer magazines, brochures, form reply letters to the public and printed product test summaries available on request. An estimated eighty million people have seen some or all of these advertisements.

The theme of Rockwell's campaign centers upon product testing done by an independent testing concern which tested, under supposedly normal use conditions, a variety of similar consumer electric drills and jigsaws manufactured by Skil and Rockwell and two other companies. In the course of this advertising campaign, Skil's tradename and trademark has been named and clearly depicted in the form of product photographs. In its related communications, Rockwell has made certain factual statements in comparative and absolute terms concerning the qualities and relative performance of its own products and those of Skil. These statements are alleged to be false, misleading, deceptive and incomplete.

Because of these deceptive and misleading statements and comparisons, Skil has suffered a loss of present and potential customers and a decline in its goodwill. Skil further alleges it has suffered serious and irreparable damage to its tradename, trademark and sales.

Count I of the Complaint seeks injunctive and other equitable relief, recovery of damages and an accounting of profits, and an award of costs plus attorneys fees under Section 43(a) of the Lanham Act (15 U.S.C.A. § 1125(a)). Federal jurisdiction of this count is alleged to exist by virtue of 28 U.S.C.A. § 1338(a) and 15 U.S.C.A. § 1121.

Counts II through IV allege that Rockwell's activities constituted false advertising, unfair competition, and public disparagement of the quality of Skil products. The relief sought is the same as in Count I. Pendent federal jurisdiction allegedly exists by virtue of 28 U.S.C.A. § 1338(b).

Count V alleges that Rockwell's advertising campaign is in violation of the Illinois Deceptive Practices Act (121½ I.R.S. §§ 311–317,[5] which confers upon

---

5. The pertinent provisions of the Illinois Act are as follows:

"§ 312. *Acts constituting deceptive trade practice.*

A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

\*       \*       \*       \*       \*

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. . . .

(7) represents that goods or services are a particular standard, quality or grade or that goods are a particular style or model, if they are of another;

(8) disparages the goods, services or business of another by false or misleading representation of fact;

\*       \*       \*       \*       \*

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action under this Act, a complainant need not prove competition between the parties or actual confusion, or misunderstanding.

This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State."

"§ 313. *Injunctive relief*

A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it in accordance with the principles of equity and upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required.

\*       \*       \*       \*       \*

Costs or attorneys' fees or both may be assessed against a defendant only if the

Skil a private cause of action. Again, the same relief as in Count I is sought.

## II.

Defendant Rockwell moves to dismiss Count I of the Complaint for failure to state a claim upon which relief may be granted under the Lanham Act. Rockwell also moves to dismiss Counts II through V for lack of subject-matter jurisdiction, since they are founded upon state law and diversity of the parties' citizenship is lacking. Thus, if Count I is dismissed, there is no basis for federal jurisdiction of the remaining counts under either 28 U.S.C. § 1338(b) or the common law doctrine of pendent jurisdiction.

Accordingly, the outcome of the pending motion to dismiss depends upon the answer to one question: Does Section 43(a) of the Lanham Act give rise to a cause of action whereby a manufacturer may sue its competitor who, in its advertisements, has made false descriptions and representations of material facts concerning its own product and that of the plaintiff in comparing their relative attributes, where: (a) the goods travel in interstate commerce, (b) the misrepresentations are likely to deceive consumers to the extent that their decision to buy may be affected, and (c) the plaintiff is damaged thereby? In view of the language of the Act itself and the case law in this Circuit and elsewhere, the issue must be resolved in the affirmative.

## III.

A. *Cause of Action Under the Lanham Act*

Enacted in 1946, Section 43(a) of the Lanham Act created a new federal statutory remedy for various types of unfair competition in interstate commerce.[6] It grew out of a recognition by Congress of the necessity to break with the restrictive guidelines laid down in such relics as American Washboard Co. v. Saginaw Manufacturing Co.[7] because of foreign trademark and patent treaty

court finds that he has wilfully engaged in a deceptive trade practice.

The relief provided in this Section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State."

6. The intent of Congress in this respect is evidenced by the language of the last sentence of Section 45 of the Act (15 U.S.C.A. § 1127):

"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; *to protect persons engaged in such commerce against unfair competition*; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations." (emphasis added).

*See also* L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954).

7. 103 F. 281 (6th Cir. 1900). There, the plaintiff was a manufacturer of an aluminum washboard which had gained a measure of popularity with the public. Suit was brought to enjoin defendant from labeling and selling its galvanized iron washboard as an aluminum one. Relief was sought not on the ground that defendant was "palming off" its product as that of the plaintiff, but because defendant was deceiving the public. The Court reflected the then prevailing law, saying:

"It is doubtless morally wrong and improper to impose upon the public by the sale of spurious goods, but this does not give rise to a private right of action unless the property rights of the plaintiff are thereby invaded. There may be many wrongs which can only be righted through public prosecution, and for which the legislature, and not the courts, must provide a remedy. Courts of equity, in granting relief by injunction, are concerned with the property rights of complainant." 103 F. at 285.

Because plaintiff did not have a "property right" in the form of a trademark and because, in the Court's opinion, lost future sales were not "property", the Court affirmed the dismissal of the lawsuit.

commitments.[8] Furthermore, Congress undoubtedly recognized and intended to remedy the destructive effect that Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) had upon the development of a uniform federal common law of unfair competition which was essential in a nation where interstate commerce was dominant.[9] Nevertheless, presumably because of the case law which preceded enactment of Section 43(a), the response to the provision was sluggish—so much so that at least one Judge surmised that the practicing bar had yet to realize the potential impact of the statute. Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 546 (2d Cir. 1956) (Clark, C. J., concurring).

Section 43(a) (15 U.S.C.A. § 1125(a)) provides in pertinent part:

"Any person who shall . . . use in *connection* with any *goods* . . . any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, . . . shall be liable to a civil action by . . . any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

The governing case law in this Circuit points directly to the conclusion that Section 43(a) creates a cause of action for conduct such as that alleged here.

In Bernard Food Industries v. Dietene Company, 415 F.2d 1279 (7th Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970), the Court held that where the defendant, in comparing its food product to plaintiff's, made false representations of fact as to *plaintiff's* product, a cause of action did *not* arise under Section 43(a). However, the Court clearly indicated that a cause of action would have arisen if defendant, in its comparision advertising, had also made false statements about its *own* product, saying:

"Further support for the view that the Act does not embrace misrepresentations about a competitor's product but only false or deceitful representations which the manufacturer or merchant makes about his own goods or services is contained in L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954), and General Pool Corp. v. Hallmark Pool Corp., 259 F. Supp. 383 (N.D.Ill.1966)."[10] 415 F.2d at 1284.

Thus, we hold that Bernard Food Industries v. Dietene Company, *supra*, re-

---

8. For an excellent discussion of this aspect of the Lanham Act, see Derenberg, Federal Unfair Competition Law at the End of the First Decade of the Lanham Act: Prologue or Epilogue? 32 N.Y.U.L.Rev. 1029, 1029–39 (1957).

9. *See* Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trademarks and Unfair Competition, 42 Colum.L.Rev. 955 (1942).

10. With due respect to the Court, it does not seem logical to distinguish between a false statement about the plaintiff's product and a false statement about the defendant's product in a case where the particular statement is contained in comparison advertising by the defendant, such that in the first instance the plaintiff does not have a cause of action whereas in the latter he does. *See* Note, Section 43(a) of the Lanham Act: Its Development and Potential, 3 Loyola U.L.J. 327, 337 (1972). Rather, it would seem that in comparison advertising, a false statement by the defendant about plaintiff's product would have the same detrimental effect

as a false statement about defendant's product. I. e., it would tend to mislead the buying public concerning the relative merits and qualities of the products, thereby inducing the purchase of a possibly inferior product. For example, assume two products (A and B) which compete in interstate commerce and which, on a scale of 100, have a rating of 75. If the person marketing A advertises that its product has a rating of 85 and compares it to B's rating of 75, then Section 43(a) is violated. But if instead, that person advertises A as rated at 75 and B as rated at 65, and then compares the two, he would not, under *Bernard Food*, violate Section 43(a). Although this distinction might be rationalized on the ground that in the latter instance, the defendant who markets A cannot cause product B to enter interstate commerce, the fact remains that, in addition to the false representation as to B's rating, there is also a false representation as to the superiority of A over B; and defendant does cause A to enter interstate commerce.

quires plaintiff to allege the following elements in order to state a claim upon which relief may be granted under Section 43(a) of the Lanham Act: (1) in its comparison advertisements, defendant made false statements of fact about its own product;[11] (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its falsely advertised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public. *See* Weil, Protectability of Trademark Values Against False Competitive Advertising, 44 Cal. L.Rev. 527, 537 (1956). In order to recover *damages* under Section 43(a), plaintiff must establish that the buying public was actually deceived; in order to obtain *equitable relief,* only a likelihood of deception need be shown. Hesmer Foods, Inc. v. Campbell Soup Company, 346 F.2d 356, 359 (7th Cir. 1965), cert. denied, 382 U.S. 839, 86 S.Ct. 89, 15 L. Ed.2d 81. We hold that Count I of the Complaint sets forth the above five elements. We further find that it states a claim upon which both damages and equitable relief may be recovered.

### B. *Federal Jurisdiction*

Section 39 of the Lanham Act (15 U. S.C.A. § 1121) confers upon the federal district courts original jurisdiction of all actions arising under the Act, regardless of the amount in controversy or the citizenship of the parties. Because Count I of the Complaint in the present case states a claim upon which relief may be granted under Section 43(a) of the Act, this Court has jurisdiction of the matter presented therein.

Furthermore, 28 U.S.C.A. § 1338(b) extends the jurisdictional reach of the federal courts in Lanham Act cases by conferring upon them original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws. Whether the federal claim is "substantial and related" to the common law unfair competition claim depends upon whether the two claims "rest upon substantially [the same] facts." Powder Power Tool Corp. v. Powder Actuated Tool Co., 230 F.2d 409, 413 (7th Cir. 1956). Although this view has been criticized as being unduly restrictive, *see* 1 Moore's Federal Practice Par. 0.60 (8.–7) at 658–59, it does appear to be the law of this Circuit. *See* Particle Data Laboratories, Inc. v. Coulter Electronics, Inc., 420 F.2d 1174, 1177 (7th Cir. 1969). Be that as it may, it is concluded that since Counts II through V reallege and rely upon the facts alleged in Count I, they all rest upon substantially the same facts. Therefore, this Court has subject-matter jurisdiction of all five Counts.

### IV.

Defendant places great reliance upon my opinion in General Pool Corporation v. Hallmark Pool Corporation, 259 F. Supp. 383 (N.D.Ill.1966), where the following was said:

"But Section 43(a) cannot be read to embrace every claim for false advertising, or for false descriptions or designations of origin. Section 43(a) must be read to embrace only those kinds of unfair competition which are analogous to, or associated with, the misuse of trademarks or tradenames, and which produce the same kinds of injuries. . . . Although it appears to be settled that Section 43(a) does not incorporate a requirement of actual "palming off" . . . Sec-

---

11. The false representations covered by the Act may be the product of affirmatively misleading statements, of partially correct statements or failure to disclose material facts. Alfred Dunhill Limited v. Interstate Cigar Co., Inc., 364 F.Supp. 366, 372 (S.D. N.Y.1973).

tion 43(a) must still be read in the context of the statute in which it appears, a statute which addresses itself to the use and misuse of trademarks and tradenames, and particularly in light of the last paragraph of Section 45 of the Act, 15 U.S.C. § 1127, which sets forth the intent of the Act." 259 F.Supp. at 385–386 (citations and footnote omitted).

The decision in *General Pool* is not applicable to the instant case for several reasons. First, the opinion was written before the decision in Bernard Food Industries v. Dietene Company, *supra*; and to the extent it is inconsistent with *Bernard Food*, it can no longer be of any effect. As stated in Part III of this opinion, *Bernard Food* held that Section 43(a) gives rise to a cause of action where the defendant makes false representations of material facts concerning his own product in comparison advertising which injures the plaintiff. The prior opinion of this Court cannot affect that holding.

Second, the gist of the action in *General Pool* was "palming off", or defendants' false statements as to the origin of their product. There, the defendants, who were once employees of the plaintiff pool manufacturer, stole a photograph of one of plaintiff's pools. That photograph, it so happened, was used by plaintiff in a brochure to advertise the particular pool portrayed. Upon defendants' use of the photograph to advertise their own pool, plaintiff brought suit under the Lanham Act. Significantly, there was no indication in the case that the pool the defendants proposed to build was any different from the one portrayed in the photograph. Thus, the action was not founded on a false statement as to the nature or quality of the defendants' pool, but rather, an attempt by defendants to identify their product as that of the plaintiff. With this in mind, it is clear that the *General Pool* case is not dispositive of the issues in the instant case; for here, the allegations are that defendant made false representations concerning its product in comparing it to plaintiff's product.

■ Third, the better-reasoned cases and, indeed, the history of the federal trademark Act itself, lead to the conclusion that the Lanham Act was intended by Congress to create a cause of action in circumstances similar to those alleged in the present case. Section 43(a) operated to enlarge its predecessor, the Trademark Act of 1920.[12] The older section dealt only with "a false designation of origin" affixed to "an article of merchandise"; it applied only against persons who used such designations "willfully and with intent to deceive"; and it gave an action only to persons "doing business in the locality falsely indicated as that of origin" or associations of such persons. Section 43(a) changed this by eliminating the requirement that the falsity be willful. Descriptions of both goods and services are now covered. A prohibition against any false description or representation of the goods or services themselves was added to the prohibition against false designations of origin. Lastly, the "standing" requirement of the statute was liberalized to include any person who believes he is or is likely to be damaged. Quite clearly, the Congressional intention was to allow a private suit by a competitor to stop the kind of unfair competition that consists

12. 41 Stat. 534 (1920), 15 U.S.C.A. § 123. The old section reads as follows:
". . . any person who shall willfully and with intent to deceive, affix, apply, or annex, or use in connection with any article or articles of merchandise, or any container or containers of the same, a false designation of origin, including words or other symbols, tending to falsely identify the origin of the merchandise, and shall then cause such merchandise to enter into interstate or foreign commerce, and any person who shall know-

ingly cause or procure the same to be transported in interstate or foreign commerce or commerce with Indian tribes, or shall knowingly deliver the same to any carrier to be so transported, shall be liable to an action at law for damages and to an action in equity for an injunction, at the suit of any person, firm, or corporation doing business in the locality falsely indicated as that of origin, or in the region in which said locality is situated, or at the suit of any association of such persons, firms, or corporations."

of lying about goods or services, when it occurs in interstate commerce. Bunn, The National Law of Unfair Competition, 62 Harv.L.Rev. 987, 999 (1949). *See also* Derenberg, Federal Unfair Competition Law at the End of the First Decade of the Lanham Act: Prologue or Epilogue? 32 N.Y.U.L.Rev. 1029, 1032–39 (1957); Callman, False Advertising as a Competitive Tort, 48 Colum.L.Rev. 876 (1948). This is the crux to the holding in L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649, 651 (3d Cir. 1954) which was cited with approval by the Court in Bernard Food Industries, Inc. v. Dietene Company, *supra*, at 1284. Perhaps the statement of Judge Youngdahl in Gold Seal Company v. Weeks, 129 F.Supp. 928 (D.C.D.C. 1955) aff'd per curiam, S. C. Johnson & Son, Inc. v. Gold Seal Co., 97 U.S.App. D.C. 282, 230 F.2d 832 (1956) cert. denied, 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed. 2d 50 (1956) best reflects the congressional intent behind Section 43(a):

> "In this respect Section 43(a) does create a federal statutory tort, *sui generis*. . . . It means that wrongful diversion of trade resulting from false description of one's products invades that interest which an honest competitor has in fair business dealings—an interest which the courts should and will protect whether it be called that of 'property', or 'quasi-property' or something else. It represents, within this area, an affirmative code of business ethics whose standards can be maintained by anyone who is or may be damaged by a violation of this segment of the code. In effect it says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine competition by destroying the buyer's opportunity to judge fairly between rival commodities by introducing such factors as falsely descriptive trademarks which are . . . of the competitive product." 129 F.Supp. at 940.

Accordingly, the *General Pool* decision is not dispositive of the issue presented here.

Defendant also relies heavily on the case of Samson Crane Co. v. Union National Sales, Inc., 87 F.Supp. 218 (D. Mass.1949), aff'd per curiam, 180 F.2d 896 (1st Cir. 1950) and quotes extensively from the opinion of the district court.[13] Aside from the fact that the

13. The portion relied upon by defendant reads as follows:

". . . It is true that the section speaks of 'any false description or representation', but this must first be interpreted in the light of the succeeding phrase which explains these words as including words or symbols tending falsely to describe or represent, not any fact, but the goods or services in connection with which the description or representation is used. The intent of Congress in passing the Act is set forth in the final paragraph of Section 1127. Only one phrase of that paragraph fails to use the word 'mark'. And that phrase ('to protect persons engaged in such commerce against unfair competition') must in such a context be construed to refer not to any competitive practice which in the broad meaning of the words might be called unfair, but to that 'unfair competition' which has been closely associated with the misuse of trademarks, i. e., the passing off of one's own goods as those of a competitor. It is clear, both from this statement of the intent and from a reading of the Act as a whole, that the primary purpose of the Act was to eliminate deceitful practices in interstate commerce involving the misuse of trademarks, but along with this is sought to eliminate other forms of misrepresentations which are of the same general character even though they do not involve any use of what can technically be called a trade-mark. The language of Section 43(a) is broad enough to include practices of this latter class. But the section should be construed to include only such false descriptions or representations as are of substantially the same economic nature as those which involve infringement or other improper use of trade-marks. It should not be interpreted so as to bring within its scope any kind of undesirable business practice which involves deception, when such practices are outside the field of the trademark laws, and especially when such undesirable practices are already the subject of other Congressional legislation, such as the Federal Trade Commission Act." 87 F. Supp. 221–222 (footnote omitted).

It is noted that the same portion is quoted with approval by the Court in Bernard Food

*Samson* case has been criticized throughout its twenty-five year existence, *see e. g.,* Derenberg, Federal Unfair Competition Law at the End of the First Decade of the Lanham Act: Prologue or Epilogue? *Supra* at 1041–42 (1957), the case is clearly inapplicable to the. facts presented here. There, the Court dismissed the Complaint for failure to state a claim under Section 43(a) because it contained no allegation that interstate commerce was involved in the requisite manner. The Court then went on to say in effect that even if interstate commerce had been sufficiently alleged, no cause of action arose under Section 43(a) because defendants were not alleged to have made misrepresentations concerning the goods they were selling. These two pleading defects are absent from the present case; and therefore, the *Samson Crane* case is not dispositive of the issue here. Lastly, the continuing vitality of *Samson* in the very district in which it originated seems to be somewhat doubtful. *See* Electronics Corporation of America v. Honeywell, Inc., 358 F.Supp. 1230, 1232–1233 (D. Mass.1973), aff'd per curiam, 487 F.2d 513 (1st Cir. 1973).

## V.

■ In conclusion, it is perhaps regretable that Section 43(a) of the Lanham Act has developed such a checkerboard complexion of apparently conflicting decisions in the federal courts. Perhaps this lack of consistency is best explained as being evidence of the fact that the judiciary has yet to reach the

limits of the coverage of the Act.[14]   As noted by Judge Learned Hand,

"there is no part of the law which is more plastic than unfair competition, and what was not reckoned an actionable wrong 25 years ago may have become such today."

Ely-Norris Safe Co. v. Mosler Safe Co., 7 F.2d 603, 604 (2d Cir. 1925).

Be that as it may, this Court holds today that the facts alleged in the instant case give rise to a cause of action whereby plaintiff may recover damages and equitable relief under the Lanham Act. It is further held that this Court has jurisdiction of the subject-matter of all five Counts of the Complaint. Accordingly, the motion of the defendant to dismiss the action is denied.

It is so ordered.

---

Industries, Inc. v. Dietene Company, *supra,* at 1283–1284. However, the *Samson* case is clearly distinguishable on the basis of the two sentences which follow the quoted portion above:

"The deceitful practices of which plaintiff here complains involve no false description or representation of the goods themselves or false designation of origin. All that is alleged is conduct by which members of the public are led to purchase clothing at a certain retail store, not because they have been deceived in any way as to the nature, quality, or origin of the goods. . . ." 87 F.Supp. at 222.

14. Indeed, there is even some thought that the Lanham Act should be read as providing a private cause of action for "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce" which are prohibited by the Federal Trade Commission Act (15 U.S.C.A. § 45(a)). *See* Bunn, The National Law of Unfair Competition, 62 Harv.L.Rev. 987 (1949). In the absence of further legislative guidance, however, it is doubtful that the Lanham Act can or should be extended that far.