The BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC., Better Business Bureau of Southeast Texas, Inc., and Council of Better Business Bureaus, Inc., Plaintiffs,

v.

MEDICAL DIRECTORS, INC., and Weight Reduction Medical Centers, Inc., Defendants.

Civ. A. No. H–81–288.

United States District Court, S. D. Texas, Houston Division.

Feb. 19, 1981.

Richard Siluk, Baker & Botts, Houston, Tex., for plaintiffs.

Murray Lieberman, Lieberman & Tratras, Stuart M. Nelkin, Nelkin & Nelkin, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CIRE, District Judge.

The Court having entered on February 13, 1981, a preliminary injunction in the above-styled case, hereby enters the findings of fact and conclusions of law which constitute the grounds for its action.

### Findings of Fact

1. Plaintiff The Better Business Bureau of Metropolitan Houston, Inc. (the "Houston Bureau") is a Texas corporation having a place of business in Houston, Texas. Plaintiff Better Business Bureau of Southeast Texas, Inc. (the "Southeast Bureau") is a Texas corporation having a place of business in Beaumont, Texas. Plaintiff Council of Better Business Bureaus, Inc. ("Council") is a Delaware corporation having a place of business in Washington, D. C.

2. Defendants, Medical Directors, Inc. ("Medical Directors") and Weight Reduction Medical Centers, Inc. ("Weight Reduction"), are Texas corporations having places of business in Houston, Texas.

3. The Council is the governing body of a national association of licensed member Bureaus which operate to further business honesty, to foster truth in advertising, and to protect the public and the business community from unfair, fraudulent and unethical business practices.

4. The Houston Bureau and the Southeast Bureau are non-profit corporations licensed by Council to operate as Better Business Bureaus in their respective territories. The Houston Bureau operates in the Texas counties of Harris, Montgomery, Fort Bend, Brazoria and Galveston, and the Southeast Bureau operates in the Texas counties of Chambers, Hardin, Jasper, Jefferson, Liberty, Newton, Orange and Tyler. In their capacity as member Better Business Bureaus, the Houston Bureau and the Southeast Bureau perform functions relating primarily to local business operations, including the review of advertising practices and the investigation of complaints relating to unethical or unfair business practices.

5. It is a policy of the Council that member Bureaus shall not endorse or recommend any company, product or service. The Council's written "Policy on Use of the Better Business Bureau Name and Logo" requires that all publications originating with or sponsored by any member Bureau must contain a prominent disclaimer that "the Better Business Bureau does not endorse any company, product or service."

6. Defendants are engaged in the operation of weight reduction centers throughout the State of Texas and other states, including the areas of responsibility of the Houston Bureau and the Southeast Bureau. In advertising and promoting their weight reduction centers, Defendants have created and published advertisements which suggest that Better Business Bureau investigators have discovered that Defendants' program "really works." The offending advertisements have featured or made reference to Bill and/or Beverly Hickman, a Beaumont couple, represented by Defendants to be Better Business Bureau investigators. The Hickmans' testimonials in Defendants' advertisements are presented in conjunction with the claims that Bill and/or Beverly Hickman conducted "a personal investiga-

tion for the Better Business Bureau" or "a personal investigation on behalf of the Better Business Bureau." Bill Hickman has also been portrayed as a "BBB Spy" in Defendants' newspaper advertisements.

7. Defendants' television, newspaper and radio advertisements have appeared in Houston, Beaumont and other locations throughout the State of Texas, and they have appeared in Louisiana and Arizona.

8. Neither Bill nor Beverly Hickman has ever been employed by any member Better Business Bureau. They have never acted as agents of any Better Business Bureau, and they have never been authorized to act as investigators for any Better Business Bureau.

9. The Hickmans signed up for Defendants' weight reduction program at one of Defendants' Beaumont locations. The Hickmans' membership in Defendants' weight reduction program was purchased without the knowledge, participation or encouragement of any Better Business Bureau.

10. Mr. Hickman voluntarily provided the Southeast Bureau with information on his experience in Defendants' weight reduction program. The information supplied by Mr. Hickman was not solicited by the Southeast Bureau, and Mr. Hickman was in no different position from any other consumer who provides information to a member Better Business Bureau.

11. Defendants have represented in their advertisements that Bill and Beverly Hickman were Better Business Bureau investigators. Defendants have represented in their advertisements that Bill and Beverly Hickman conducted a personal investigation for and on behalf of the Better Business Bureau. Defendants have represented in their advertisements that Bill Hickman was a "BBB Spy." These representations create the false and misleading impression that the Better Business Bureau stands behind the Hickmans' endorsement of Defendants' weight reduction program, and by implication approves or endorses Defendants' weight reduction program, and that the Better Business Bureau vouches for the safety and effectiveness of Defendants' program.

12. In a telephone conversation with Mary Ann Kittell, Executive Vice President of the Southeast Bureau, prior to the broadcast or publication of any of Defendants' advertisements, Tony Conway, Defendants' advertising director, was informed that Bill Hickman was not acting under the aegis of the Better Business Bureau, but was acting on his own. Ms. Kittell made clear that the Better Business Bureau did not endorse or approve Defendants' business, and that use of the BBB name was impermissible.

13. Defendants' representations are likely to cause confusion, mistake and deception on the part of the public.

14. Defendants' representations are likely to cause irreparable injury to Plaintiffs and to the Better Business Bureau name and reputation. The threatened injury to Plaintiffs from the continued publication and broadcast of the offending advertisements by Defendants outweighs any possible damage to Defendants from the grant of the requested injunction. Defendants may freely advertise their weight reduction program without making references or allusions to the Better Business Bureau.

15. Any finding of fact made herein which constitutes a conclusion of law is hereby adopted as such.

### Conclusions of Law

1. This Court has personal jurisdiction over the parties hereto.

2. This suit arises under the Lanham Act, 15 U.S.C. § 1051 et seq., and the laws of the State of Texas, and the Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

3. Plaintiffs have standing to maintain this action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to prevent injury to the name and reputation of the Better Business Bureau. *Gilliam v. American Broadcasting Companies, Inc.*, 538 F.2d 14, 19 (2d Cir. 1976); Plaintiffs have standing under Texas common law to maintain

their action for violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code Ann. 2, § 17.41 *et seq., Featherstone v. Independent Service Station Ass'n of Texas,* 10 S.W.2d 124 (Tex.Civ.App.—Dallas 1928, no writ); and for unfair competition. Plaintiff Council has standing to maintain its action for trademark infringement. 15 U.S.C. § 1114.

■ 4. False representations in advertising are prohibited by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *American Home Prod. Corp. v. Johnson & Johnson,* 577 F.2d 160 (2d Cir. 1978); Section 43(a) is a remedial provision and is to be broadly construed. *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649 (3d Cir. 1954). Liability under Section 43(a) is not restricted to literal falsehoods, but extends as well to misleading impressions created by the clever use of innuendo, indirect intimations and ambiguous suggestions. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 467 F.Supp. 366, 374 (S.D.N.Y.), *aff'd,* 604 F.2d 200 (2d Cir. 1979). It is not necessary to show an intent to deceive. Neither is it necessary to show actual confusion or deception; all that is required is that the representations have a tendency to deceive. *Id.* Moreover, "where the evidence shows 'that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit.'" *Id* at 374–375.

5. Unauthorized use of a registered mark is prohibited by 15 U.S.C. § 1114.

■ 6. In order to secure a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood that Plaintiffs will prevail at a trial on the merits; (2) possible irreparable injury in the absence of injunctive relief; (3) the threatened injury to Plaintiffs outweighs possible damage to Defendants from the grant of the injunction; and (4) the injunction is not adverse to the public interest.

■ 7. The Court is satisfied that Plaintiffs have met their burden on the issuance of a preliminary injunction. On consideration of the evidence and testimony adduced in this proceeding, there is a likelihood that Plaintiffs will prove that Defendants' representations (that Bill and Beverly Hickman are Better Business Bureau investigators; that Bill and Beverly Hickman have conducted a personal investigation for and on behalf of the Better Business Bureau; and that Bill Hickman is a "BBB Spy") are false and misleading. There is evidence that Defendants carried out their advertising campaign with the intent to trade upon the name and reputation of the Better Business Bureau to mislead consumers into believing that the Better Business Bureau approves or endorses Defendants' weight reduction program, or that the Better Business Bureau vouches for the efficacy of Defendants' program and the accuracy of their advertising claims. Such conduct would constitute violations of 15 U.S.C. § 1125 and 15 U.S.C. § 1114. Use of the Better Business Bureau name in a manner which patrons and subscribing members of Plaintiffs find repugnant presents a special threat to the good name and good will of Plaintiffs and other Better Business Bureaus. Good will and reputation are protected under the Lanham Act, and there is a likelihood that Plaintiffs will prevail in its claim that Defendants' conduct is damaging thereto. Irreparable injury may result if Defendants' abuse of Plaintiff's name and good will is not enjoined.

8. Defendants, on the other hand, have failed to show that any recognizable injury would result from the issuance of the requested injunction. Defendants are free to advertise their services without making references or allusions to the Better Business Bureau or to Plaintiffs individually. Accordingly, the Court concludes that the threatened injury to Plaintiffs outweighs any possible damage to the Defendants from the grant of the injunction.

9. Finally, the Court concludes that an injunction is in the public interest. The

likelihood of confusion created by Defendants' advertisements is a deception on the public. Members of the public who would not otherwise use Defendants' services may be induced to do so in the false belief that the Better Business Bureau has investigated Defendants and determined that Defendants' program is safe and effective, or that the Better Business Bureau approves or endorses Defendants and their services.

10. False and misleading representations are not shielded by the First Amendment. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

11. The Court concludes that the requested injunction should be granted, and that the scope of the injunction requested by Plaintiffs is appropriate and necessary to prevent a continued likelihood of confusion and deception. In view of Defendants' past practices and the likelihood of confusion and deception engendered thereby, the need for Defendants to disassociate themselves completely from the Better Business Bureau name and mark requires that Defendants be enjoined from any use of the terms "Better Business Bureau" and "BBB" in their advertising.

12. Any conclusion of law made herein which constitutes a finding of fact is hereby adopted as such.