RAGOLD, INC., a Delaware
Corporation, Plaintiff,

v.

FERRERO, U.S.A., INC., a Delaware Corporation, and Altschiller, Reitzfeld, Jackson & Solin, Inc., a New York Corporation, Defendants.

No. 80 C 3980.

United States District Court,
N. D. Illinois, E. D.

Aug. 8, 1980.

**119**

William Freivogel, Robert E. Wangard, Monica A. Carroll, Ross, Hardies, Babcock, O'Keefe & Parsons, Henry L. Mason, Sidley & Austin, Chicago, Ill., for plaintiff.

Malcolm A. Chandler, Burditt & Calkins, Chicago, Ill., Robert A. Schwartz, Davis & Gilbert, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Ragold, Inc. ("Ragold"), a Delaware corporation with its principal place of business in Illinois, has brought an action against defendants, Ferrero, U.S.A., Inc. ("Ferrero"), a Delaware corporation with its principal place of business in New York, and Altschiller, Reitzfeld, Jackson & Solin ("Altschiller"), a New York corporation with its principal place of business in New York. Jurisdiction for this action is based upon the Lanham Act, 15 U.S.C. § 1121 and upon 28 U.S.C. § 1338.

In brief, plaintiff alleges that defendants have conspired to develop and disseminate an advertising campaign that falsely describes and misrepresents the properties of Tic Tac, a candy mint that is sold and distributed by Ferrero, in its comparison to Velamints, a candy mint imported and distributed by Ragold. Altschiller is alleged to be an advertising agency engaged by Ferrero for the advertising and promotion of Tic Tac. Plaintiff claims that defendants' ac-

tions constitute violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), various state statutes and common law.

This matter is now before the Court on defendants' motion to dismiss for want of jurisdiction or, in the alternative, to transfer, and on plaintiff's motions for a temporary restraining order and for an expedited discovery schedule. Each of these motions will be treated separately and in the order listed above.

## I. The Illinois Long-Arm Statute

Defendants have moved to dismiss plaintiff's complaint on the ground that this Court lacks personal jurisdiction over defendants under the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 17(1), which provides:

Any person, whether or not a citizen of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if, an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business in this State;

(b) The commission of a tortious act within this State. . . .

Plaintiff, who bears the burden of proving that jurisdiction is appropriate, *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936), argues that defendant has both transacted business and committed tortious acts in Illinois. Though both parties have introduced affidavits in support of their claims, where the affidavits contain conflicting statements, this Court must assume the facts related in plaintiff's affidavits and complaint to be true. *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971).

Plaintiff claims that defendants transact business in Illinois by virtue of their continuous sales and advertising in this state. Plaintiff supports this claim with affidavits by persons who state (1) that defendants' trade materials have been distributed to brokers and other persons in Illinois; (2)

that defendant Ferrero distributes Tic Tacs nationally; and (3) that defendant Altschiller created the television commercials at issue and caused them to be broadcast on local television stations in Chicago since mid-June, 1980.

■ Defendants respond by arguing that plaintiff's complaint does not contain allegations adequate to support its claim that defendants engage in business activities in Illinois. Defendants assert that the only transaction of business in Illinois alleged in plaintiff's complaint is the extensive sale of Tic Tacs in Illinois (Complaint ¶ 6), and that this allegation cannot suffice as grounds for a finding of personal jurisdiction because the alleged cause of action does not arise out of the sale of Tic Tacs.[1] While it is true that plaintiff's cause of action does not arise out of the sale of Tic Tacs, plaintiff has alleged other acts that bring defendants under the jurisdiction of this Court. In paragraph 7 of the complaint, plaintiff alleges that defendants collaborated and conspired in the development of an advertising campaign, including television commercials, promotional brochures, and other materials that falsely describe and misrepresent the properties of Tic Tac, and that this campaign was disseminated to consumers, brokers, wholesalers, and retail outlets "throughout the United States." Implicit in this allegation is the obvious fact that the term "throughout the United States" includes Illinois. Plaintiff's affidavits provide the details necessary to flesh out the general allegations of the complaint. While plaintiff's complaint may have benefitted from greater specificity, that does not constitute cause to dismiss this action. "When a court is considering a challenge to its jurisdiction over defendant or over a res, it may receive and weigh affidavits; 'matters of jurisdiction ... [are] very often not apparent on the face of the summons or complaint'." Wright & Miller, Federal Practice and Procedure: Civil § 1351, at 565–566 (1973).

It is the advertising and solicitation by plaintiff that give rise to this cause of action. This case is markedly different from *Lindley v. St. Louis-San Francisco Railway Co.*, 407 F.2d 639, 641–642 (7th Cir. 1968), cited by defendants, where the court held that a railroad, whose only activity in Illinois was the solicitation of business, did not come under the Illinois court's jurisdiction, because the cause of action did not arise from the solicitation. However, *Lindley* is distinguishable from the instant case because this cause of action arises from defendants advertising and solicitation of customers and retailers in Illinois. The Court, therefore, concludes that defendants have transacted business under section 17(1)(a) of the Illinois long-arm statute.

■ Personal jurisdiction over defendants also exists by virtue of section 17(1)(b) of the long-arm statute, since those acts which constitute the transaction of business are also tortious acts committed in Illinois. Violations of section 43(a) of the Lanham Act constitute a tort of unfair competition. *F.E.L. Publications, Ltd. v. Nat'l Conference of Catholic Bishops*, 466 F.Supp. 1034, 1044 (N.D.Ill.1978). It is irrelevant that defendants may have effected distribution in Illinois through independent distributors, *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279 (N.D.Ill.1980), or through agents. Ill. Rev.Stat. ch. 110, § 17(1).

---

1. Plaintiff argues that even if defendants' description of plaintiff's complaint were accurate and plaintiff's only allegation of jurisdictional fact was the extensive sale of Tic Tacs in Illinois, defendants would still be subject to in personam service in Illinois as an actual resident because defendants have been engaged in a continuous and systematic course of business in the state. *Lindley v. St. Louis-San Francisco Railway Co.*, 407 F.2d 639 (7th Cir. 1968). "[A] corporation that engaged in a continuous and systematic course of business in the State be-comes subject to that State's jurisdiction even though the subject lawsuit may have no relationship to the business that the corporation does within the State." *Braband v. Beech Aircraft Corp.*, 51 Ill.App.3d 296, 9 Ill.Dec. 684, 367 N.E.2d 118 (1977), *aff'd*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978). Because this Court concludes that it has jurisdiction over defendants under the Illinois long-arm statute, it is unnecessary to consider this argument.

The decision in *Novel v. Garrison*, 294 F.Supp. 825 (N.D.Ill.1969), is not to the contrary. The court in *Garrison* relied upon the decision in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), as being controlling. 294 F.Supp. at 831. Recognizing the legislative intent of the Illinois long-arm statute to exert jurisdiction over non-residents to the extent permitted under due process, the court in *Gray* held that, "the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." 22 Ill.2d at 440, 176 N.E.2d at 765. It is undisputed that defendants have placed allegedly deceptive trade materials and commercials for shipment into Illinois; that the materials have been distributed in Illinois; and that the commercials have been shown in Illinois. To the extent that plaintiff has suffered injury from the tortious conduct alleged, a significant proportion of that injury has occurred in Illinois.

For the foregoing reasons, defendants' motion to dismiss for want of jurisdiction must be denied.

## II. *Motion to Transfer*

■ Having determined that the Court possesses jurisdiction over defendants on the basis of the Illinois long-arm statute, the Court now turns to defendants' request to have this matter transferred to the Southern District of New York.[2] The Court begins from the premise that since plaintiff is a resident of this judicial district, its choice of venue is entitled to considerable deference. *Hess v. Gray*, 85 F.R.D. 15, 24 (N.D.Ill.1979). Consequently, movant must persuade the Court that the considerations embodied in section 1404(a) weigh heavily in favor of transfer. *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1188 n.19 (7th Cir. 1971); *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979). Whether this burden has been met is a decision committed to the discretion of the Court upon a review of all the circumstances of the case. *General Foods Corp. v. Carnation Co.*, 411 F.2d 528, 533 (7th Cir. 1969); *Hess id.* at 23.

■ There is no dispute that venue would be proper both in the transferror and transferree courts. Defendants, however, have not convinced the Court that the other essential considerations—convenience of the parties, convenience of the witnesses, and the interests of justice—weigh heavily in favor of transfer.

While it is correct that defendants' employees, accountants and records are located in New York, it is likewise true that plaintiff's records, employees, and advertising agency's records are all located in Chicago. Consequently, insofar as convenience of parties is concerned, transfer would shift, rather than eliminate, inconvenience.

Similarly, the Court finds that convenience of witnesses would not be furthered by transfer. Defendants have suggested that many of their witnesses reside in the New York area. Most of these proposed witnesses are employees of either the defendants or of public relations and accounting firms hired by the defendants. Given the nature of this action, however, it is apparent that the majority of the witnesses will not be the occurrence-type witnesses suggested by the defendants, but rather will be expert witnesses who testify as to the allegedly disparaging and misleading commercials and as to the proof of damages. Because the convenience of experts is irrelevant in determining the propriety of transfer, *Blumenthal v. Management Assistance, Inc.*, 480 F.Supp. 470, 474 (N.D.Ill. 1980), the convenience of witnesses does not weigh heavily in favor of transfer in this case. Accordingly, the Court concludes that plaintiff's choice of forum should not be disturbed.[3]

---

2. 28 U.S.C. § 1404(a) provides:

   For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

3. Defendants have not argued that the "interest of justice" mandates transfer in this matter.

### III. *Motion for a Temporary Restraining Order*

As previously stated, plaintiff alleges that certain advertising used by defendants to promote "Tic Tac" violates the Lanham Act as well as various common law and state statutory provisions. Three particular advertisements have been placed in issue. First, there is a 30-second television commercial, which contains a visual comparison of Tic Tac and Velamints along with the following text:

> I've got a confession to make. I've always loved the freshness of Tic Tac. But when sugar frees came along, I figured I'd give up some of that freshness to get fewer calories. Know what? I was wrong. Sugar free Velamints have 9 calories. And Tic Tac has 1½. Not 9, 1½. So I'm staying with Tic Tac. Because, to get fewer calories you don't have to give up taste, or freshness, or nothin'. Tic Tac. The 1½ calorie mint.

A storyboard of this commercial is attached as Appendix A.[a] There also is an abbreviated, 10-second version of this commercial which has been aired. This commercial does not provide a visual comparison of Tic Tac and Velamints. The text of the 10-second commercial is as follows:

> This may surprise you. A sugar free Velamint has 9 calories while a cool, refreshing Tic Tac has 1½. Tic Tac, the 1½ calorie mint.

A storyboard of this commercial is attached as Appendix B.[a] Finally, plaintiff challenges an advertising "package" of brochures, promotional flyers, and other materials that defendants have been distributing to trade customers. In sum, these materials state that "until now, America hasn't been told the truth about sugar-free mints;" and that each Tic Tac has only 1½ calories whereas Velamints have 9 calories each. This advertising package is attached hereto as Appendix C.[a]

In its Lanham Act claim,[4] upon which this request for a temporary restraining order is based, plaintiff contends that these advertisements are objectionable for a number of reasons. As to the television commercials, plaintiff argues they are deceptive and misleading in that they compare the calorie content of Tic Tac and Velamints on a mint-to-mint basis rather than on an equivalent weight basis, thereby fostering the false impression that consumers eat Tic Tac and Velamints in equal quantities when in fact defendant, through its packaging and promotion, has encouraged multiple consumption of Tic Tac. Complaint, ¶ 8(a), (b). Plaintiff further contends that these commercials unfairly disparage the taste and freshness of Velamints, Complaint, ¶ 8(c); and that by claiming that users of Tic Tac give up "nothin'", the commercials are deceptive in that they fail to disclose to consumers the dental problems that might result from using a mint containing sugar. Complaint, ¶ 8(d), (e). The advertising package disseminated to trade customers is alleged to engender the same misconceptions about Tic Tac and Velamints. Complaint, ¶ 9(a), (b). In addition, plaintiff submits that the suggestion contained in the trade advertisements, that plaintiff has failed to tell the truth about its calorie content, is false and misleading.

■ Having decided the issues of jurisdiction and venue, the question before the

---

a. Appendices are unable to be reproduced and are omitted from publication.

4. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Court is whether plaintiff is entitled to the extraordinary relief of a temporary restraining order.[5] Since the defendants received notice of plaintiff's motion and were afforded an opportunity (albeit brief), to respond both orally and in writing, the criteria for determining the propriety of preliminary injunctive relief are applicable herein. *See* Wright and Miller, Federal Practice and Procedure: Civil § 2951 at 499 (1973).[6] It is within the sound discretion of a trial judge to grant a temporary restraining order when the movant satisfies its burden of persuasion as to each of the following prerequisites: (1) an inadequate remedy at law and irreparable harm in the absence of injunctive relief; (2) the threat of harm to the movant outweighs the harm that would result to the opposing party if an injunction issues; (3) at least a reasona-

ble likelihood that the movant will prevail on the merits of its claim; and (4) the public interest will be served by a grant of injunctive relief. *Citizens Energy Coalition of Indiana v. Sendak*, 594 F.2d 1158, 1162–1163 (7th Cir. 1979); *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976); *Ohio—Sealy Mattress Manufacturing Co. v. Duncan*, 486 F.Supp. 1047, 1052 (N.D.Ill.1980); *Great Western Cities, Inc. v. Binstein*, 476 F.Supp. 827, 835 (N.D.Ill. 1979); *Illinois Migrant Council v. Pilliod*, 398 F.Supp. 882, 901 (N.D.Ill.1975). Inasmuch as plaintiff at this very early stage of the proceedings has failed to persuade the Court of its reasonable likelihood of success on the merits, the motion for a temporary restraining order is denied.[7]

**5.** By this motion, plaintiff seeks to restrain temporarily

(a) Any claim or statement creating the impression Tic Tac has fewer calories than any leading mint, including Velamints;

(b) Any claim or statement creating the impression Tic Tac is a lower calories product than Velamints;

(c) Any claim or statement creating the impression Tic Tac is equal or superior to Velamints with respect to all product attributes or that Velamints are inferior in any respect.

**6.** The application of these standards, however, does not alter the fact that the instant motion before the Court is one for a temporary restraining order rather than one for preliminary injunctive relief. This motion was assigned to the Court for consideration on July 31, 1980, solely because of its emergency nature. At that time, the parties were given a brief opportunity to address the motion for a temporary restraining order, as well as the jurisdictional issues raised by defendants, with the full understanding by all involved that any requests for preliminary injunctive relief would be brought before Judge Will in September. To this end, the parties submitted authority on the question of whether the Court, should it grant the temporary restraining order, could extend its effect beyond the 20-day period provided in Fed.R.Civ.P. 65(b) without converting the order into an appealable preliminary injunction.

Moreover, while counsel have responded admirably given the exigencies of time, it is evident that the type of evidence before the Court is not that which is characteristic of motions for preliminary injunctive relief. No live evidence was adduced, and the documentary evidence presented to the Court has been sketchy at best. Indeed, the Court in a telephonic com-

munication with the parties offered the option of lengthening the briefing schedules and converting this proceeding into one for a preliminary injunction. The parties declined this offer, however, preferring to wait until Judge Will's return on September 8 to seek a preliminary injunction. Plaintiff in particular has stated that extra time is necessary in order that it may gather through discovery further evidence in support of its claims.

Thus, the nature of the evidence before this Court, as well as the express intent of the parties to await Judge Will's return to proceed on the question of preliminary injunctive relief, indicate that the instant motion was in its origin, and continues to be, a prayer for a temporary restraining order.

**7.** *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970), has been cited as authority for the proposition that a showing of likelihood of success on the merits is unnecessary in a motion for injunctive relief where there is a compelling showing of both irreparable harm to the movant and little harm to the non-moving party in the event that an injunction is issued. *See* Wright and Miller, Federal Practice and Procedure: Civil § 2948 at 453 n.59 (1973). Although this view has been lauded by at least one commentator as consistent with the traditional equity practice, *Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction*, 71 Colum.L. Rev. 165 (1971), the Court believes that a more reasonable interpretation of *Semmes* is that a weaker showing of likelihood of success on the merits is needed when there are strong showings by the movant as to irreparable harm and the balance of the equities. *See Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore*

**124**

■ There are a myriad of formulations which courts have used to express what is required of a movant in proving a reasonable likelihood of success. *See* Wright and Miller, Federal Practice and Procedure: Civil § 2948 at 451–452 (1973). The Seventh Circuit has recognized that this factor "creates a somewhat flexible standard that allows the chancellor room for the exercise of judgment." *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 293 (7th Cir. 1974). At the very least, this standard has been thought to require a showing that the movant has a "good chance" of succeeding on the merits of its claim. *Local Division 519, Amalgamated Transit Union, AFL–CIO v. LaCrosse Municipal Transit Authority*, 585 F.2d 1340, 1351 (7th Cir. 1978); *Ohio-Sealy*, 486 F.Supp. at 1057. However, inasmuch as plaintiff has failed to make a strong showing of both irreparable harm and a balance of the equities in its favor, *see* note 7, *supra*, the Court finds that plaintiff must show more than just a "good chance" of prevailing on the merits. This, plaintiff has failed to do.

■ The elements of a claim for deceptive comparative advertising under the Lanham Act are well established. A plaintiff must show that (1) the defendant has made false statements of fact as to its own product, with such falsity stemming from actual misstatements, partially correct statements, or failures to disclose; (2) there is actual deception or at least a tendency to deceive a substantial section of the audience; (3) the deception must be material, in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury, stemming either from a decline in sales or loss in good will. *Skil Corp. v. Rockwell International Corp.*, 375 F.Supp. 777, 783 (N.D.Ill.1974); *see also Bernard Food Industries, Inc. v. Dietene Co.*, 415 F.2d 1279, 1283 (7th Cir. 1969), *cert. denied*, 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970). For the reasons that follow, the Court finds that plaintiff has failed in its burden of persuasion as to all three advertisements on the first two elements of the *Skil Corp.* test.[8]

> *Products, Inc.*, 545 F.2d 1096, 1098 (7th Cir. 1976).
>
> In this case, the Court finds that plaintiff has made a showing of irreparable harm only as to the television commercials. Although the Court is not persuaded that damages will be incalculable, in part because the prayer for relief contained in the complaint sets forth a theory for calculating such damages, the Court does believe that there will be harm to good will in that there will be shifts in buyer allegiance that may be irreparable. As to the trade advertisements, there is no evidence that any loss of broker business would be irreparable, or even that it stems from any alleged deception in the advertising. The affidavit of Keith Catlin, Vice-President of Sales for plaintiff, states only that he has received "anxious telephone calls" from brokers, which he believed reflected their apprehension about carrying a brand that was under "attack" by another brand. He does not state whether this apprehension is a result of the television or trade advertisements, or whether it results from the alleged deception rather than more generally from the aggressive advertising campaign undertaken by defendants.
>
> Moreover, the Court finds that plaintiff has not shown that the balance of equities weighs heavily in its favor as to any of the advertisements in question. It is clear that a temporary restraining order would leave defendants without any television advertising which at this time could be substituted in the spot time already purchased. Although there is dispute as to how long it would take defendants to rectify this situation, there would be some time period in which defendants would be without television advertising. It is apparent that defendants have devised television advertising which plaintiff believes to be effective in affecting consumers; the harm that would result to defendants from an order restraining the use of those commercials is difficult to determine. However, when balanced against the irreparable harm that plaintiff would suffer from continuation of the advertising, it cannot be said that the balance of equities strongly favors plaintiff. Finally, inasmuch as the Court has found that plaintiff has not proven a likelihood of success on the merits, an order restraining the dissemination of the advertising in question would not be in the public interest.

8. In their responsive brief, defendants conceded the issues of materiality and dissemination of the goods in interstate commerce. Moreover, as the likelihood of injury, the Court finds that plaintiff has carried its burden with respect to the television commercials, but has failed to do so as to the trade advertisements. *See* note 7, *supra*.

In a case such as this, where the advertisements are attacked not on the basis that they are literally false, but rather misleading and deceptive due to the nature of the presentation, the role of the Court is limited. The Court's subjective reaction to the advertisement is "at best not determinative and at worst irrelevant." Rather, it is the reaction of the group to which the advertisement is directed that is dispositive. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165–166 (2d Cir. 1978); *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517 at 524 (S.D. N.Y., 1980); *American Brands, Inc. v. R. J. Reynolds*, 413 F.Supp. 1352, 1357 (S.D.N.Y. 1976). As the court in *McNeilab* observed, however, this does not mean that the trial judge is bound by the conclusions of market analysts or other expert witnesses:

> Though the court's *own* reaction to the advertisements is not determinative, as finder of fact it is obliged to judge for itself whether the evidence of record establishes that *others* are likely to be misled or confused. In doing so, the court must, of course, rely on its own experience and understanding of human nature in drawing reasonable inferences about the reactions of consumers to the challenged advertising.

*Id.* at 525. Viewing the evidence presented in light of these foregoing principles, the Court will address the three different commercials in turn.

### A. *30-Second Commercial*

1. Representations as to Calorie Content

The essential premise underlying plaintiff's claim that the commercial misrepresents the respective calorie contents of Tic Tac and Velamints is that the appropriate unit of comparison is by weight rather than by individual mint. From this premise flows plaintiff's other two contentions: that the advertisement fails to reflect adequately the respective sizes of Tic Tac and Velamints, and neglects to inform viewers that the promise of fewer calories depends on the consumption of fewer than six Tic Tac for every Velamint. In support of its arguments, plaintiff first cites to a pair of Federal Trade Commission ("FTC") decisions which it believes establish the proposition that comparisons of products of nonequivalent weight are inherently misleading. *In the Matter of National Bakers Services, Inc.*, 62 F.T.C. 1115 (1963), *aff'd sub nom., National Bakers Services, Inc. v. F.T.C.*, 329 F.2d 365 (7th Cir. 1964); *In the Matter of Bakers Franchise Corp*, 59 F.T.C. 70 (1961), *aff'd sub nom., Bakers Franchise Corp. v. F.T.C.*, 302 F.2d 258 (3d Cir. 1962). Plaintiff also has submitted a consumer survey, which it asserts shows that the commercial at least has a tendency to deceive, and the affidavit of Donald G. Tennant, Chairman of the advertising agency hired by plaintiff to promote Velamints, which states that the design and marketing of Tic Tacs suggests that one mint is not the appropriate serving size.

None of the evidence and authority cited by plaintiff, however, has persuaded this Court that caloric content by weight is the appropriate basis for comparing Tic Tac and Velamints. Both FTC decisions are distinguishable on their facts.[9] Those cases dealt with a situation in the bread industry, whereby certain producers claimed that their breads were lower in calorie content per slice than other breads. The lower calo-

---

9. Furthermore, the Court believes that as a matter of law these FTC cases are weak authority for actions under the Lanham Act. This was the holding of the court in *American Home Products Corp. v. Johnson & Johnson*, 436 F.Supp. 785, 797–798 (S.D.N.Y.1977), and the implication of the court in *Skil Corp. v. Rockwell International Corp.*, 375 F.Supp. 777, 786 n.14 (N.D.Ill.1974). The reason for this is twofold. First, while the focus of proceedings before the FTC or the Food & Drug Administration ("FDA") is vindication of the public inter-est, private litigation under the Lanham Act seeks primarily to regulate business competition, with any benefit to the consuming public incidental. *American Home Products Corp.*, 436 F.Supp. at 797. Second, as plaintiff observes, that there is no private right of action under the Federal Trade Commission Act. Thus, were the Court to import FTC standards into this litigation, in essence it would grant indirectly what is unavailable by direct means: the private enforcement of the Federal Trade Commission Act.

rie content, however, was achieved by packaging one-pound loaves of bread in 18 gram slices, containing 48 calories, rather than the standard 23 gram slice, which contained 63 calories each.[10] In finding the claim of fewer calories on this basis to be deceptive, the FTC noted that (1) the standard slice size was 23 grams; (2) both the thinly-sliced bread and other loaves containing standard slices were of the same calorie content per standard one-pound loaf; and (3) the more thinly-sliced bread contained fewer of the nutrients—other than protein—contained in the standard slices, thereby suggesting that persons might consume more of the thin slices than they would standard slices. *Bakers Franchise Corp.*, 59 F.T.C. at 74–76; *National Bakers Service*, 62 F.T.C. at 1133–34, 1143.

In this case, however, it is clear that Tic Tac is a lower calorie product when measured either on a per mint or per package basis.[11] Moreover, unlike the situation with bread, the smaller size of Tic Tac in comparison to Velamints does not create significant nutritional differences which might be relevant to consumers. Nor has plaintiff offered any evidence as to the strength of the mint flavor in the respective products which would suggest that comparison by weight is more appropriate than comparison by mint. In this regard, plaintiff has introduced no evidence as to a standard serving size by weight prevalent in the industry, or to actual consumption habits by users of Tic Tac.

The Tennant affidavit is unpersuasive on the question of whether the design and marketing of Tic Tac encourages a serving size of more than one mint. To the extent that Tennant's affidavit is probative of this point,[12] the Court believes that its value is at least neutralized, if not outweighed, by the affidavit by Alberto Allasia, Marketing Manager of defendant Ferrero, and the advertising storyboards attached hereto.[b] From this it is apparent that the thrust of Tic Tac advertising has been to promote the proper serving size as one mint. Moreover, contrary to the assertions made by Tennant, the Court has not been convinced that the package in which Tic Tac is marketed makes multiple consumption "inevitable."

■ Thus, it is the Court's view that plaintiff has failed to show that it is inappropriate to compare the caloric properties of Tic Tac and Velamint on a mint-to-mint basis. For this reason, the results of the consumer survey, which according to plaintiff indicates that people viewing the 30-second commercial are left with the impression that Tic Tac is a lower calorie product than Velamint, is not supportive of its claim of deception. As indicated, Tic Tac *is* a lower calorie product when measured either on a per mint or per package basis. Indeed, when asked what the commercial said about the calories in Tic Tac as compared to Velamints, two-thirds of the sample responded by stating specifically that Tic Tac was less caloric on a per mint basis. Since plaintiff has failed to show that mint or package size are inappropriate units of comparison, the consumer impression cannot at this point be said to support a conclusion that plaintiff has shown a likelihood of prevailing on its claim that the advertisement carries a false

10. This was the case in *National Bakers Services*. In *Bakers Franchise Corp.*, the defendant had used 17 gram slices consisting of 45 calories each.

11. Although there is some minor discrepancy in the various figures offered, it generally is agreed that each Tic Tac contains 1½ calories, and a package of 40 contains 60 calories. Velamints, by contrast, contain slightly more than 9 calories each, and a package of 12 contain roughly 110 calories. *See* Affidavit of Keith Catlin at 3; Affidavit of Alberto Allasia, Exhibits E–1, 2.

12. Defendants have filed a motion to strike portions the Tennant Affidavit on the ground that they constitute opinions that extend beyond Tennant's established qualifications as an expert. Inasmuch as the Tennant affidavit has not been relied upon by the Court in granting relief for plaintiff, however, the Court need not rule upon the motion to strike. Instead, the motion will be continued for consideration, if necessary, by Judge Will upon his return.

b. See footnote a p. 122.

calorie message which has a tendency to deceive the consumer audience.[13]

■ The Court also finds without merit to plaintiff's argument that defendants' commercial should state expressly that the lower calorie content of Tic Tac vis-a-vis Velamint depends on consuming fewer than six Tic Tacs for each Velamint. The commercial, both through graphics and the written word, clearly indicates to consumers that each Tic Tac contains roughly one-sixth the calories of a single Velamint. In the Court's judgment, it is not unreasonable to expect that the viewing audience will be able to make the calculation that Tic Tac will not be less caloric if consumed in more than a six-to-one ratio than they would consume Velamints. Similarly, the Court rejects plaintiff's contention that the visual comparison of Tic Tac and Velamints is insufficient because it is undimensional and fails to convey adequately the relative size of the two mints.[14] The inability of the television medium to convey in full the dimensional properties of objects no doubt presents certain difficulties in comparative advertising situations. However, it is the Court's view that the visual comparison provided in the commercial is sufficient to apprise consumers of the different sizes of the respective mints. This is so particularly since the graphic is accompanied by the respective calorie content per mint, thus providing further information from which the consumer might infer that the size of Tic Tac is roughly one-sixth that of Velamints, the same as the calorie proportion of Tic Tac to Velamints. Moreover, taken to its logical end, plaintiff's argument would lead to the result that all visual comparisons of products of disparate size are inaccurate and thus misleading. The Court is unwilling to endorse such a rule.

For the foregoing reasons, the Court concludes that plaintiff has failed to show a reasonable likelihood that it will prevail on its Lanham Act theory that the caloric content representation in the 30-second commercial is deceptive and tends to mislead.

### 2. Disparagement of Freshness/Quality of Velamints

As a threshold matter, the Court must determine whether this claim of disparagement as to Velamints states a claim under the Lanham Act. While this allegation might state a claim under one or more of the pendent state law counts contained in the complaint, the motion for a temporary restraining order is premised solely on the Lanham Act. Thus, if disparagement is not actionable under the Lanham Act, it cannot form the basis for the relief requested in the instant motion.

■ As stated earlier, an essential element of a comparative advertising—or any claim—under the Lanham Act is that the complaint alleges that defendant in some way has misrepresented his own product,

---

**13.** In addition, it is the Court's view that the consumer survey suffers from a number of defects which further diminish its probative value. First, the small sample size—only 30 persons—casts into doubt the general applicability of the results. This much is admitted by the very person who directed the study. Affidavit of Gay Luhrs, at 3. Moreover, Luhrs' detailed findings deal with only some of the questions asked. In particular, he failed to analyze the question which asked viewers to state what the commercial said about Tic Tacs in comparison to Velamints, and failed to discuss the significance of the response by 70 percent of the participants that their opinions about Tic Tac and Velamints were unchanged by the commercial. Finally, the Court observes that the commercial shown to those participating in the sample survey, although 30-seconds in duration, appears to be somewhat different in its graphic presentation than the commercial

shown on television. *Compare* Appendix A c *with* the storyboard of the commercial used in the survey, attached as Appendix D c hereto.
  c See footnote a page 122.

**14.** Again, plaintiff's reliance on the FTC rulings is misplaced. Assuming their applicability herein, *see* note 9, *supra*, the Court finds those cases distinguishable on their facts. There, the FTC found that the deception would be heightened by including in the bread packaging a comparison to standard sliced bread *because* the packaging also contained misleading statements as to the dietary properties of the bread. *Bakers Franchise Corp.*, 59 F.T.C. at 76; *National Bakers Services*, 62 F.T.C. at 1137. Those cases in no way stand for the proposition that visual comparisons of products of disparate size are inherently misleading.

rather than plaintiff's product. In *Bernard Food Industries, Inc. v. Dietene Co.*, 415 F.2d at 1283, the court held that since "this case is concerned only with disparagement of the plaintiff's product, it does not come within the purview of the Lanham Act. False advertising or representations made by a defendant about a plaintiff's product are not covered by section 43(a)." The court reasoned that the potentially expansive meaning of the term "unfair competition" found in 15 U.S.C. § 1127, which sets forth the congressional intent of the Lanham Act, must be qualified in light of the more general purpose of that section: to protect against the misuse of trademarks. Thus, the court found that section 43(a) gives rise to a cause of action for deception in advertising only to the extent that the misrepresentation, as is the case in trademark cases involving palming off and false designation of origin, pertains to the defendant's own product. Although this reasoning has been questioned, *see Skil Corp.*, 375 F.Supp. at 782 n.10, the authority of *Bernard Food* on this point remains undiminished. *Skil Corp.*, 375 F.Supp. at 782 and n.11. Since it is evident that disparagement is not actionable under the Lanham Act, this element of the complaint cannot support the motion for a temporary restraining order.

■ Moreover, even were the Court to consider disparagement actionable under the Lanham Act, it would find that plaintiff has failed to carry its preliminary burden of persuasion on this point. The language of the commercial does not inevitably give rise to an interpretation of disparagement, unless the Court were to go so far as to hold that all claims of product superiority constitute disparagement. Furthermore, plaintiff has introduced no evidence of consumer response on this point; nor does the Tennant affidavit provide any relevant opinion. Thus, the Court concludes that the disparagement claim does not support the requested relief.

### 3. Deception as to Other Product Properties

■ Plaintiff's argument on this score essentially is that the consumption of sugar mints carries with it certain cariogenic consequences as to which the commercial misleads by its inclusion of the statement that users of Tic Tac have to give up "nothin' ". The court in *McNeilab, Inc.* was faced with a similar claim. There, the makers of Tylenol Extra Strength alleged that an advertisement claiming that Maximum Strength Anacin contained more of "the pain reliever that doctors recommend most" was deceptive because it failed to apprise the audience that the particular ingredient was aspirin, which has certain side effects and should not be taken by all consumers. In rejecting that claim, the court observed that "a failure to inform consumers of something, even something they should know, is not *per se* a misrepresentation actionable under section 43(a) of the Lanham Act." *Id.* at 532.

Similarly, the Court is not persuaded that the representation in this commercial is deceptive *per se*. Nor has plaintiff pointed to any evidence in the record suggesting that viewers of this commercial are misled as to the consequences of eating a mint containing sugar. Accordingly, this aspect of alleged deception fails to support the relief requested.

Thus, the Court concludes that none of the alleged deficiencies in the 30-second commercial have been supported to the extent that the Court can say plaintiff stands at least a "good chance" of prevailing on the merits of its Lanham Act claim. In light of the failure to satisfy this essential element of the test for the issuance of the temporary restraining order, the Court denies plaintiff's attempt to enjoin temporarily the airing of this commercial.

### B. *The 10-Second Commercial*

■ In this commercial, there is no reference to "giving up taste and freshness;" thus, plaintiff cannot complain that this commercial disparages its product. Nor does this commercial contain the statement that users of Tic Tac give up "nothin' "; for this reason, the commercial cannot be considered objectionable for misleading view-

ers as to the consequences of eating sugar mints. Thus, the sole basis for alleging that this commercial is deceptive must be the mint-to-mint calorie comparison contained therein.

This argument, however, suffers from the same flaws that marked plaintiff's contentions with respect to the 30-second commercial. First and foremost, plaintiff has failed to show that weight, rather than a mint-to-mint comparison, is the appropriate measure for analyzing the calorie content of the two products. Moreover, plaintiff has failed to offer the Court any consumer surveys or other expert evidence in support of its claim that this particular commercial is deceptive as to the caloric properties of Tic Tac and Velamints.

Plaintiff, however, does allege that this commercial is more objectionable than the 30-second commercial by reason of its failure to provide any visual comparison of the mints. The Court cannot help but observe the irony in this argument, given plaintiff's vigorous contention that visual comparisons such as that in the 30-second commercial actually heighten the deceptiveness of that commercial. This inconsistency aside, the Court notes that the failure to provide a visual comparison does not appear to constitute deception in and of itself. Until there is probative evidence as to the appropriate measure of comparison—be it mint-to-mint, package, or weight—the Court cannot conclude that a likelihood of deception inures in the failure to provide a graphic comparison of the mints. Thus, the Court finds that plaintiff has failed to carry its burden of persuasion as to its likelihood of prevailing on its Lanham Act claim with respect to the 10-second commercial. For this reason, the request for a temporary restraining order must be denied.

### C. The Trade Advertising

▮ Plaintiff alleges that the trade advertising contains much of the same deceptiveness as does the consumer advertising,

in that it fails to provide an accurate basis for comparing the caloric content of the products and deceives the brokers as to the dental health consequences of using a sugar mint. For the reasons stated above, the Court finds these claims insufficient to warrant a finding of likelihood of success on the merits.

In addition, plaintiff alleges that the trade advertisements suggest that it has not been telling the "truth" about the calorie content of sugar-free mints. This claim of disparagement as to plaintiff's product, however, fails to state a claim under the Lanham Act. *See Bernard Food*, 415 F.2d at 1283. Accordingly, this claim as well is insufficient to provide a basis for the relief requested herein.

In summary, the Court finds that plaintiff has failed to meet its burden of showing a likelihood of success on the merits as to its Lanham Act claims concerning the 30-second commercial, the 10-second commercial, and the trade advertising. For this reason, the motion for a temporary restraining order is denied.[15] It should be observed that this ruling is not intended to state an ultimate view as to the merit of plaintiff's Lanham Act claims—except to the extent that the Court has found that certain allegations are not actionable thereunder—or its state statutory and common law claims. The Court merely holds that at this early stage of the proceedings, plaintiff has failed to come forth with sufficient evidence to justify the extraordinary remedy of a temporary restraining order.

At Judge Will's [16] request, the Court will set a status hearing date of September 8, 1980, at which time the Court is confident that Judge Will shall establish a schedule whereby plaintiff may obtain an expeditious hearing on its prayer for preliminary injunctive relief. Anticipating that Judge Will shall accommodate plaintiff's request that its preliminary injunction motion be heard soon after his return on September 8,

---

**15.** As a result of this determination, it is unnecessary for the Court to set a hearing as to the bond necessary to support the issuance of a temporary restraining order.

**16.** This cause, regularly assigned to Judge Will, was heard in Judge Will's absence by this Court acting as Emergency Judge. *See* note 6, *supra.*

**130**

the Court will grant the motion for expedited discovery and also set an expedited briefing schedule for the motion for preliminary injunction. Defendants are ordered to comply with plaintiff's initial discovery requests on or before August 20, 1980. Plaintiff's brief in support of the motion for a preliminary injunction is to be filed on or before August 25, 1980. Defendants are to respond on or before September 2, 1980. Plaintiff may file its reply on or before September 8, 1980. Requests for modifications of this timetable are discouraged and will be made only if exigent circumstances are fully demonstrated. The foregoing discovery and briefing schedule will afford Judge Will the option of scheduling the motion for hearing shortly after the September 8, 1980, status hearing. It is so ordered.