**CHICAGOLAND PROCESSING CORPORATION, an Illinois corporation, Plaintiff,**

v.

**Fred K. WHITE, individually and d/b/a Chicago Numismatic Foundation; and Patricia Gordon and James Gordon, d/b/a National Fast Time Photo and National Fast Time One Hour Photo, Defendants.**

No. 89 C 4294.

United States District Court, N.D. Illinois, E.D.

June 14, 1989.

Donald L. Welsh, Gerald S. Schur and Laurie A. Haynie, Welsh & Katz, Ltd., and Howard M. Turner, Chicago, Ill., for plaintiff.

Fred K. White, pro se.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

When the rain poured from the Chicago skies on the night of August 8, 1988, it put to an early end the first baseball game played under the lights at Wrigley Field—so early, in fact, that the game never became official under major league baseball rules. The teams and the fans returned the next night, started anew and completed the game. Most people understood what the rainout meant; the plaintiff in this action apparently does not.

The plaintiff, you see, is the Chicagoland Processing Corporation, a manufacturer and marketer of commemorative medallions. Before the first night game, it contracted with the Major League Baseball Properties, Inc., to sell 39,012 medallions for the historic event. Each medallion depicted Wrigley Field and included the following legend:

FIRST NIGHT GAME

CHICAGO CUBS

PHILADELPHIA PHILLIES

A NIGHT TO REMEMBER

Chicagoland began advertising its medallion around July 17, 1988 in newspapers of general and interstate circulation, including the following advertisement in the Chicago Tribune:

1ST CHICAGO CUBS NIGHT GAME

AUGUST 8, 1988—CUBS VS PHILLIES
WHERE WERE YOU WHEN THE LIGHTS WENT ON?

\*　　\*　　\*

Officially Licensed by Major
League Baseball

\*　　\*　　\*

Individually Numbered

Edition limited to Wrigley Field seating

Capacity of 39,012

Though Chicagoland was the only company to receive Major League authorization for a medallion, defendant Fred White,

president and sole owner of defendant Chicago Numismatic Foundation, also saw the potential for turning a profit on the sporting event. A few weeks before the game, he too began advertising a medal commemorating the event. An attorney for the Major Leagues visited him and warned against representing that his medal was sponsored or authorized by Major League Baseball; Mr. White complied.

After the first night game ended early, Mr. White had an idea. Why not make a medal commemorating the second game, the first official night game played at Wrigley Field? During May, 1989, he ran the following advertisements for this medal in the Chicago Sun–Times:

SPORTS FANS & COLLECTORS

FIRST OFFICIAL WRIGLEY FIELD NIGHT GAME

COMMEMORATIVE MEDAL

Now Available: The First Official Night Game in Wrigley Field, August 9, 1988, one ounce silver proof commemorative Medal. All medals are serial numbered, registered and come with a lifetime buy back guarantee.... There is a strict limited edition of 36,399, this represents the attendance of the game. This is the finest sport medal made to date.

Though Chicagoland had nearly sold out all of its medallions (and now apparently has done so), Chicagoland's counsel, by letter dated May 19, 1989, demanded that Mr. White cease these advertisements because they were false and misleading, and as such in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, § 261 et seq. When Mr. White refused, Chicagoland filed this lawsuit.

Chicagoland first came to bat before Judge Aspen, sitting as the emergency judge. It must have swung well, for on May 25, 1989, Judge Aspen issued a Temporary Restraining Order preventing Mr. White from advertising his medals for ten days. See Fed.R.Civ.P. 65(b). In return, Chicagoland posted a $5,000 bond as security. See Fed.R.Civ.P. 65(c).

On June 4, this court ordered expedited discovery, extended the TRO to June 9, and set an evidentiary hearing on Chicagoland's motion for that date. The parties completed their discovery, and agreed to consolidate the preliminary injunction hearing with the final hearing on the merits.

DISCUSSION

To prove a violation of either the Lanham Act or the Consumer Fraud Act, Chicagoland must first show that Mr. White falsely represented his medallion.[1] See 15 U.S.C. § 1125(a); Ill.Rev.Stat. ch. 121½, § 312. Since it cannot do so, this court need not decide whether Mr. White's medallion has a tendency to deceive a substantial section of the baseball-loving public, nor whether any such deception would cause Chicagoland harm. See *Ragold, Inc. v. Ferrero, USA, Inc.,* 506 F.Supp. 117, 124 (N.D.Ill.1980).

Chicagoland argues that Mr. White's advertisement is false because it represents that his is the first official medallion commemorating the first Chicago Cubs night game. Mr. White's medallion was neither the first, nor official, Chicagoland says.

Mr. White insists that his advertisement does not say what Chicagoland says it does. According to Mr. White, the advertisement represents that his is simply a medallion, neither the first nor official, commemorating the first official Chicago Cubs night game, a reading he supports by the fact that the second line of the advertisement states "FIRST OFFICIAL WRIGLEY FIELD NIGHT GAME", and the third "COMMEMORATIVE MEDAL".

In an advertisement lacking punctuation, it is difficult to say what the significance of a line break should be. In this case, however, it is also unnecessary, for Chicagoland's reading of the advertisement makes

---

1. Chicagoland also has alleged five common law violations, but it agrees that these claims, too, turn on the falsity of Mr. White's advertisement.

no sense. According to Chicagoland, "FIRST OFFICIAL" modifies "MEDAL", not "WRIGLEY FIELD NIGHT GAME", so that the sentence reads something like this: "FIRST OFFICIAL ... WRIGLEY FIELD NIGHT GAME COMMEMORATIVE MEDAL", but that makes no sense. Mr. White is not selling a medal commemorating a Wrigley Field night game, he is selling a medal commemorating the first official Wrigley Field night game—the game played on August 9, 1988—as the first line of small print in his advertisement explicitly says. Perhaps he could make this even clearer by advertising "A COMMEMORATIVE MEDAL FOR THE FIRST OFFICIAL WRIGLEY FIELD NIGHT GAME", but he need not do so. There is nothing false about his advertisement as it now reads,[2] and thus this court has no grounds for preventing him from running it.

One issue remains. During the June 9 hearing, Mr. White moved for relief against the security Chicagoland posted in obtaining the TRO. Fed.R.Civ.P. 65.1 provides for precisely such a motion "without the necessity of an independent action." Mr. White says that he lost thirty sales, at nine dollars per sale, as a result of the TRO, and Chicagoland does not dispute this amount. This court therefore will award Mr. White $270 out of Chicagoland's surety bond.

### CONCLUSION

Chicagoland's motion for preliminary and permanent injunctions is denied. Judgment is entered against Chicagoland. Chicagoland shall tender the defendants $270 out of the surety bond.

---

2. On May 26, the Chicago Sun-Times ran one advertisement for Mr. White which read "THE OFFICIAL FIRST WRIGLEY FIELD NIGHT GAME [line break] COMMEMORATIVE MED-AL." This was a mistake on the newspaper's part, and Mr. White immediately called to correct it. Chicagoland does not predicate its claims on this error.