**CLUB GENE & GEORGETTI LIMITED PARTNERSHIP, an Illinois Limited Partnership, Plaintiff,**

v.

**LA LUNA ENTERPRISES, INC., an Illinois corporation, d/b/a Erie Cafe; E.J. Lenzi, an individual, and Toni Lenzi, an individual, Defendants.**

No. 95 C 2708.

United States District Court, N.D. Illinois, Eastern Division.

June 9, 1995.

James H. Ryan, Michael Scott Friman, Hal J. Wood, Horwood, Marcus & Braun, Chicago, IL, for plaintiff.

Stephen Philip Kikoler, James Michael Dash, Rosenthal & Schanfield, P.C., Chicago, IL, for defendants.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Plaintiff seeks a preliminary injunction barring defendants from using certain advertisements which refer to plaintiff's trademarks. For the reasons stated herein, plaintiff's motion for a preliminary injunction is granted.

## Background

Plaintiff, Club Gene and Georgetti Limited Partnership ("G & G"), owns and operates a restaurant in Chicago named Club Gene & Georgetti ("Gene & Georgetti's"). Gene & Georgetti's was founded in June, 1941 by Gene Michelotti, who owned and operated the restaurant until its sale to G & G in January, 1992. Gene & Georgetti's is one of the oldest and most widely-recognized steakhouses in Chicago, attracting a large number of customers throughout the United States. G & G owns servicemarks registered with the Illinois Secretary of State for the names "Gene & Georgetti," "Club Gene & Georgetti," and "Georgetti."

Defendants, La Luna Enterprises, Inc., E.J. Lenzi ("Mr. Lenzi"), and Toni Lenzi ("Ms. Lenzi"), own and operate a steak restaurant in Chicago named Erie Cafe. Mr. Lenzi is the grandson of Gene Michelotti. Between 1974 and 1994, Mr. Lenzi worked at Gene & Georgetti's in various capacities.[1] In June, 1994, he left his employment at Gene & Georgetti's. At that time, G & G warned Mr. Lenzi not to use G & G's trade names, styles, or dress in connection with any other business venture. In September, 1994, the defendants opened Erie Cafe.[2]

In August, 1994, G & G obtained a copy of an invitation for an Erie Cafe "Preview Party" scheduled for September 7, 1994. The back cover of the invitation read:

> By re-establishing the historic Erie Cafe, E.J. and Toni Lenzi continue a Chicago tradition of fine dining instituted by E.J.'s grandfather, Gene Michelotti, founder of Club Gene & Georgetti.

Complaint, Ex.B. In a letter dated September 2, 1994, G & G objected to this language on the ground that it suggested a connection or relationship between the two restaurants. G & G also objected to the defendants' use of Gene & Georgetti's customer list and a menu format which closely resembled that of Gene & Georgetti's, and insisted that the defendants refrain from using or referring to G & G's trade names and styles in connection with its business.

In April, 1995, G & G learned that the defendants had placed a paid advertisement in "Where" magazine which, for the most part, reiterated the offending language from the party invitation.[3] On May 5, 1995, G & G brought this action charging the defendants with violations of the Lanham Trade–Mark Act, 15 U.S.C. § 1125(a); unfair competition; dilution of G & G's intellectual property rights in violation of 765 ILCS § 1035/15; and engaging in deceptive trade practices in violation of 815 ILCS § 510/2. G & G moves for a preliminary injunction barring the defendants from using any advertising or promotional materials containing the foregoing language, which it believes is likely to mislead the public into assuming that the two restaurants are commonly owned or otherwise associated.

## Discussion

■ A party seeking a preliminary injunction must demonstrate that (1) it has some likelihood of succeeding on the merits; (2) it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied; (3) the balance of relative harms weighs in the movant's favor; and (4) the public interest will not be harmed if the injunction issues. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.

---

1. Mr. Lenzi states that he worked part-time at Gene & Georgetti's during the summers from 1974 to 1979, and full-time as manager from 1985 to 1994. G & G states that Mr. Lenzi worked as an assistant maitre d´from 1977 to 1994 and had no management responsibilities in that position.

2. Prior to its re-establishment in 1994, Erie Cafe used to be a well-known steakhouse in Chicago. The defendants state that Gene Michelotti worked as a bartender and porter at the former Erie Cafe for a number of years before he founded Gene and Georgetti's.

3. The differences between the two materials are insignificant: The paid advertisement used the phrase "tradition of excellent prime aged steak and chops" where the invitation used the phrase "tradition of fine dining;" the advertisement referred to only Mr. Lenzi, while the invitation referred to both Mr. and Mrs. Lenzi; and the advertisement used the mark "Gene & Georgetti's" where the invitation used the mark "Club Gene & Georgetti." *See* Complaint, Exs. B, D.

1986) (citation omitted); *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992).

■ The Lanham Act protects consumers from deceptive claims about the nature and origin of products and services. *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1148 (7th Cir. 1992). To prevail on its Lanham Act claim, G & G must show that the advertising and promotional materials at issue are likely to confuse consumers. 15 U.S.C. § 1125(a); *A.J. Canfield Co. v. Vess Beverages, Inc., supra,* 796 F.2d at 906. A Lanham Act plaintiff has

> at least three evidentiary routes to prove a likelihood of confusion: (1) Survey evidence; (2) Evidence of actual confusion; and/or (3) Argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace.

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §§ 23.20[2], 23.01[2] (3d ed. 1994). It is well settled that a plaintiff need not present evidence of actual confusion or a consumer survey to obtain a preliminary injunction. *Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1070 (7th Cir.1992); *Abbott Laboratories v. Mead Johnson & Co., supra,* 971 F.2d at 22 n. 7; *Vaughan Mfg. Co. v. Brikam Int'l, Inc.,* 814 F.2d 346, 349 (7th Cir.1987).

■ In this case, the parties have not presented any evidence other than the advertisements themselves. Accordingly, the role of this court is limited to examining the advertisements and deciding whether they are likely to confuse the public in the manner anticipated by G & G. *See Abbott Laboratories v. Mead Johnson & Co., supra,* 971 F.2d at 22 n. 7; *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 937 (7th Cir.1989), *cert. denied,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990); *Ragold, Inc. v. Ferrero, U.S.A., Inc.,* 506 F.Supp. 117, 125 (N.D.Ill.1980). In making such a determination, a court should not rely on its own subjective reaction to the advertisement. *See Ragold, Inc. v. Ferrero, U.S.A., Inc., supra,* 506 F.Supp. at 125. Rather,

as finder of fact it is obliged to judge for itself whether the evidence of record establishes that others are likely to be confused. In doing so, the court must, of course, rely on its own experience and understanding of human nature in drawing reasonable inferences about the reactions of consumers to the challenged advertising.

*Id.* (citation omitted); *see also* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, *supra,* § 23.20[2] ("[T]his is not a subjective judgment as to whether the judge [or] jury ... would personally be confused, but rather, whether the ordinary, prudent customer in the marketplace would likely be confused").

Defendants' advertisement reads, in pertinent part:

> By re-establishing the historic Erie Cafe, E.J. Lenzi continues a Chicago tradition of excellent prime aged steaks and chops instituted by his grandfather Gene Michelotti, founder of Gene & Georgetti's.

Complaint, Ex.D. The description of Erie Cafe as a "continu[ation of] a Chicago tradition ... instituted by ... Gene Michelotti, founder of Gene & Georgetti's," suggests that there is some connection between the two restaurants. That phrase, read in conjunction with the reference to Gene Michelotti as E.J. Lenzi's grandfather and the identification of E.J. Lenzi as the individual who "re-establish[ed] the historic Erie Cafe," invites the inference that the two restaurants are owned and operated by the same family in a common business enterprise. Defendants' suggestion that this language merely invites the reader to compare the two restaurants is unpersuasive.

Defendants argue that the advertisement permissibly uses G & G's trade name to identify an individual, Gene Michelotti, with the establishment of Gene & Georgetti's. It is well settled that "the trademark laws do not prohibit the use of a company name or trademark where the name or trademark is used as a means of identifying ... an individual working for a company." *BIEC International, Inc. v. Global Steel Services, Ltd.,* 791 F.Supp. 489, 535 (E.D.Pa.1992) (citations omitted); *see also Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 700 F.Supp. 1213, 1233–34 (S.D.N.Y.1988), *aff'd in part,*

*rev'd in part on other grounds*, 887 F.2d 399 (2nd Cir.1989). However, this advertisement does not identify Mr. Lenzi as a former employee of Gene & Georgetti's, nor does it merely indicate that Gene Michelotti founded Gene & Georgetti's. Rather, it refers to the familial relationship between E.J. Lenzi and Gene Michelotti, identifies Gene Michelotti as founder of Gene & Georgetti's, and states that Mr. Lenzi is continuing a tradition instituted by his grandfather. Clearly, this goes beyond the mere use of a trademark as a means of identifying an individual working for a company.

▪ In assessing the likelihood of confusion, a court should also consider other factors, including the similarity of the marks, the similarity of the products, the area and manner of concurrent use, the degree of care likely to be exercised by consumers, the strength of the complainant's mark, actual confusion, and the intent of the defendant to palm off his goods as those of another. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 615 (7th Cir.1993). None of these factors alone is dispositive, and some of these factors may weigh more heavily than others depending on the particular circumstances of the case. *Id.* at 616; *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1185 (7th Cir.1989). Several of these factors suggest that the advertisement's language was designed to, and will in fact, create consumer confusion: both businesses are restaurants, specializing in steaks and offering many other similar food items; Club Gene & Georgetti is one of the oldest and most widely-recognized restaurants in Chicago, while the Erie Cafe is a start-up venture which opened in September, 1994; and the two restaurants are located less than one mile apart from one another. For purposes of obtaining a preliminary injunction, G & G has met its burden of demonstrating a reasonable likelihood of prevailing on the merits.

▪ G & G has also satisfied the other requirements necessary for the issuance of a preliminary injunction. The lack of an adequate remedy at law and irreparable harm are generally presumed in trademark infringement cases. *Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, *supra*, 814 F.2d at 349;

*Health O Meter, Inc. v. Terraillon Corp.*, 873 F.Supp. 1160, 1175 (N.D.Ill.), *appeal dismissed*, 52 F.3d 342 (Fed.Cir.1995). G & G argues that it will be likely to lose consumer confidence and goodwill if an injunction does not issue. This is a legitimate concern. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir.1987). This harm certainly outweighs the potential harm suffered by the defendants if they are prohibited from using advertisements containing language to which G & G expressly objected at least as early as September 2, 1994. Moreover, there is no basis for finding that an injunction in this case will harm the public interest. To the contrary, the public interest will be best served by avoiding confusion created by the advertisements. Accordingly, plaintiff's motion for a preliminary injunction is granted.